298 F.2d 24
 62-1 USTC P 9175
 W. H. HAGGARD, Jr. and Joanne Haggard, Appellants,
v.
Wilson WOOD, District Director of Internal Revenue, Appellee.
W. H. HAGGARD and Elva Haggard, Appellants,
v.
Wilson WOOD, District Director of Internal Revenue, Appellee.
J. W. HAGGARD and Re Nee Haggard, Appellants,
v.
Wilson WOOD, District Director of Internal Revenue, Appellee.
 Nos. 17284, 17306, 17307.
 United States Court of Appeals Ninth Circuit.
 Nov. 20, 1961.
 
 W. Lee McLane, Jr., Nola McLane, Phoenix, Ariz., Thaddeus Rojek, Los Angeles, Calif., for appellants.
 Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Harry Baum and John A. Bailey, Attys., Dept. of Justice, Washington, D.C., and C.A. Muecke, U.S. Atty., Phoenix, Ariz., for appellee.
 Before ORR, KOELSCH and DUNIWAY, Circuit Judges.
 ORR, Circuit Judge.
 
 
 1
 We have three cases consolidated for argument. They involve a common question for determination. Appellants reported the net proceeds from the termination of a partnership as capital gain on their income tax returns for the calendar year 1953. The District Director of Internal Revenue, treating the said proceeds as ordinary income, asserted a deficiency which was paid and for which appellants subsequently sued for refunds. The trial court upheld the District Director's determination. We are asked to reverse.
 
 
 2
 The evidence before the trial court consisted of a stipulation and certain exhibits.
 
 
 3
 The sole question for consideration is whether the finding of the District Court that taxpayers in substance and effect sold a cotton crop and not partnership interests within the meaning of the tax laws[1] is
 
 
 4
 supported by substantial evidence in the record. The evidence being in effect documentary, the finding of the trial court does not carry the compelling effect that it might had there been oral evidence, but we are nevertheless not to set it aside unless it can be said to be clearly erroneous. Rollingwood Corp. v. Commissioner, 190 F.2d 263 (9th Cir.1951). We note also that in these suits for refund, the taxpayers have the burden of proving the facts essential to bring themselves within the sections of the statute providing for capital gain treatment. Kessler v. United States, 124 F.2d 152, 154 (3d Cir.1941).
 
 
 5
 The undisputed facts are that on March 17, 1953, taxpayers W. H. Haggard, his son W. H. Haggard, Jr. and nephew J. W. Haggard, formed the Junior Cotton Company (hereinafter the Company), a 'family partnership,' whose announced purpose was that of 'engaging in the farming business.' It was understood that 'the partnership shall farm and cultivate 410 acres of cotton for the coming crop year.' The 'contributed capital' of the Company was stated to be the use, only, of farm machinery belonging to W. H. Haggard & Son, a separate partnership, and the use, only, of a total of 410 acres of land previously in the possession of the three Haggards individually, in varying amounts. For the succeeding eight months, the Company farmed and cultivated the said 410 acres of growing cotton.
 
 
 6
 On November 18, 1953, David M. Haggard, father of J. W. Haggard and brother of W. H. Haggard, offered by letter to purchase the cotton crop from the Company. The offer was to remain open for two days only. The Company, through each of its members, rejected the offer on November 20th, stating that 'under no circumstances would we be interested in selling partnership assets.' Thereupon, on the 23rd and 24th, David M. Haggard, by separate letters to each of the members of the Company, offered to purchase his 'entire partnership interest.' These offers were to remain open until the 26th only. On the 25th, each of the offerees accepted by letter, stating variously that 'you are clearly purchasing a partnership interest and not specific assets,' or 'I am accepting an offer to purchase my complete partnership interest.'
 
 
 7
 Thereafter, on November 28, 1953, by an 'Agreement of Sale,' each member of the Company purported to convey to David M. Haggard an 'entire partnership interest' in exchange for consideration appropriate to a proportionate share in the Company. The total assets of the Company at that time consisted of the cotton crop, a bank account of.$5,039.01 and an account receivable of $3,994.12 from a cotton gin. Pursuant to the Agreement of Sale, the bank in which the above account stood was notified of the transfer and the account was duly assigned, the account receivable was also assigned, and a Bill of Sale of the cotton crop was executed, all in favor of David M. Haggard. In accordance with Arizona law, a Notice of Sale in Bulk was published by the Company.
 
 
 8
 Subsequent to the execution of the above Agreements, David M. Haggard paid to W. H. Haggard & Son, the separate partnership previously referred to, $5,500 to complete the harvesting of any unharvested cotton on the 410 acres of cotton grown by the Company. The farm machinery previously used by the Company had been furnished without charge by W. H. Haggard & Son, and that partnership took depreciation on the said machinery on its tax returns for 1953. Between November 28 and December 31, 1953, David M. Haggard completed the sale of the cotton crop. During that same period he also paid off promissory notes given to the former members of the Junior Cotton Company as part of the consideration for the transfer of the Company interests to David.
 
 
 9
 Finally, it appears that the above transactions were entered into after advice was secured by taxpayers from a firm of tax law specialists, and that many of the critical documents were kept on file with that law firm.
 
 
 10
 Taxpayers argue that the foregoing recited evidence constitutes no support whatever for the finding that a cotton crop alone, rather than substantial partnership interests, was sold. It was for the trial court to draw inferences and determine what the evidence means. Rollingwood Corp. v. Commissioner, 190 F.2d 263 (9th Cir.1951). The inquiry here is directed to what is the 'substance and effect' of the transaction, as contrasted to its 'form and appearance.' Knetsch v. United States, 272 F.2d 200 (9th Cir.1959), affirmed 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960). It is true that in virtually all the documents involved in the present transaction taxpayers were careful to call the arrangements sales of 'partnership interests' as opposed to 'assets.' However, the court must look to the underlying reality of the transactions to determine whether it is fact or fiction which has been indulged in. Commissioner of Internal Revenue v. P. G. Lake, Inc., 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958).
 
 
 11
 The instant case is closely analogous to, and must be governed by, our decision in Trousdale v. Commissioner, 219 F.2d 563 (9th Cir.1955). There the taxpayer and one Dehn formed a partnership for the purpose of 'conducting a residential construction and contracting business.' The partners performed largely supervisory functions under contract with the actual operating concern in which they were shareholders, and they had no employees and no tangible assets apart from a small amount of cash and receivables. After the work of this partnership was nearing completion, the taxpayer sold his interest to third parties brought in by an executive of one of the affiliated operating concerns. These third parties, all related to the said executive, and all with virtually no previous business experience, formed a partnership to receive assignments of contracts and receivables from, and to make collections and disbursements of outstanding sums and obligations of, the former partnership. As sums were collected, payments were made to the taxpayer in discharge of notes given him as consideration for his interests in the previous partnership. In that case, this court said:
 
 
 12
 '* * * (the partnership) did substantially what a liquidating agent for a dissolved partnership might have done, and nothing more. * * *
 
 
 13
 'We think that the Tax Court could properly find, as it did, that this was a case in which the transaction was not in substance and effect the sale of a partnership interest * * *.' 219 F.2d at 567.
 
 
 14
 So here, where the work carried on was basically that of the individuals alone, where the accomplished objective of the partnership was the conduct of work during a single crop year, where the Company had no employees and virtually no assets apart from the growing crop, and where the transfer of interests came just prior to the fulfillment of the whole purpose of the Company, we think that the District Court correctly found that taxpayers had nothing to transfer which could properly be called a 'capital asset'[2] within the taxing act.
 
 
 15
 In the context of these cases, the 'capital asset' which is accorded favored treatment by the statute is commonly associated with a 'going concern.' Hatch's Estate v. Commissioner, 198 F.2d 26, 30, 31 (9th Cir.1952). This favored treatment is given for the purpose of facilitating ready transfer of going enterprises by reducing the incidence of taxation on increments in value built up over a long period, such as might be attributable to good will, and the like. Commissioner of Internal Revenue v. P. G. Lake, Inc., supra; Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 52, 76 S.Ct. 20, 100 L.Ed. 29 (1955); Rollingwood Corp. v. Commissioner, supra. It is evident that this policy would in no way be furthered by capital gain treatment in this case, but rather that the lump sum consideration given for the transfers was 'essentially a substitute for what would otherwise be received at a future time as ordinary income.' 356 U.S. at 265, 78 S.Ct. at 694.
 
 
 16
 As we pointed out in Trousdale, supra, the doctrine now applied in no way limits the right of taxpayers to employ any legal method of doing business they may select for the purpose of minimizing taxes. Yet, the means employed must not be mere subterfuge or sham. The distinction is one between 'minimizing taxes in business,' and 'being in the business of minimizing taxes.' See Lannan v. Kelm, 221 F.2d 725, 736 (8th Cir.1965).
 
 
 17
 Taxpayers complain that the Government uses the substance over form doctrine as a 'multi-purpose escape hatch' and furnishes no adequate criteria to guide taxpayers in business planning. We undertook in Trousdale to define in some detail the reasoning and development of this doctrine since the leading cases of Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930) and Gregory v. Helvering, 292 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). Our discussion there is valid today. See, for example, Knetsch v. United States, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960). Bench marks are set forth in the cases just cited, from which those concerned can form considered judgments.
 
 
 18
 Affirmed.
 
 
 
 [1]
 'Sec. 117. Capital gains and losses
 '(a) Definitions. As used in this chapter--
 '(1) Capital assets.-- The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business) but does not include--
 '(A) * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; * * *.
 '(j) Gains and losses from * * * the sale or exchange of certain property used in the trade or business.--
 '(1) Definition of property used in the trade or business.-- For the purposes of this subsection, the term 'property used in the trade or business' means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l), held for more than 6 months, which is not * * * (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * *.
 '(2) General rule.-- If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business * * * exceed the recognized losses from such sales, exchanges, * * * such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. * * *
 '(3) Sale of land with unharvested crop.-- In the case of an unharvested crop on land used in the trade or business and held for more than 6 months, if the crop and the land are sold or exchanged (or compulsorily or involuntarily converted as described in paragraph (2)) at the same time and to the same person, the crop shall be considered as 'property used in the trade or business.' * * *' 26 U.S.C.A. 117.
 
 
 [2]
 It is settled that the transfer of the crop itself, apart from the land on which it grew, is not entitled to capital gain treatment. See Watson v. Commissioner, 345 U.S. 544, 73 S.Ct. 848, 97 L.Ed. 1232 (1953) and I.R.C. of 1939, 117(j)(3), supra