**Lester Wm. ROTH and Gertrude F. Roth, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

Nos. 18201, 18208.

United States Court of Appeals Ninth Circuit.

Aug. 5, 1963.

Lester William Roth, Beverly Hills, Cal., in pro. per. and as atty. for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Donald P. Horwitz, and Michael I. Smith, Attys., Dept. of Justice, Washington, D. C., for respondents.

Before BARNES, HAMLEY and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

In return for an investment of $1,600, taxpayer's law firm acquired a 3.2% interest in a partnership organized to produce and exploit motion pictures. The partnership produced one picture—"Knock on Wood," starring Danny Kaye—and contracted to give Paramount Pictures Corporation exclusive distribution rights to the picture for a ten-year period, which began in July 1954, in return for a portion of the gross receipts.

On August 9, 1954 taxpayer's law firm entered into a written agreement purporting to "sell and assign their entire interest in the partnership" to a corporation. The corporation agreed to pay taxpayer's law firm 3.2% of the amounts received by the partnership under the Paramount distribution contract for a period of seven years. The corporation further agreed to pay taxpayer's law firm 3.2% of the residual value of the picture at the expiration of the seven-year period. If the corporation assigned its interest in the picture, the assignment was to be made subject to the interest of taxpayer's law firm, or the law firm was to have 3.2% of the consideration received by the corporation for the assignment.

The taxpayer reported as capital gain the amount by which the payments which he received during 1955 and 1956 from the corporation under the August 9, 1954 agreement exceeded his share of his law firm's capital contribution to the partnership. The Commissioner determined that the payments were ordinary income and asserted a deficiency. Taxpayer petitioned the Tax Court for a redetermination.

The Tax Court found that "The agreement of August 9, 1954 * * * had no economic significance in that by it nothing of substance was transferred between the parties thereto." The Court pointed out that taxpayer's law firm retained its 3.2% share both of the current income from the exhibition of "Knock on Wood," and of the picture's residual value. The Court also pointed out that, although the law firm's right to income was to terminate three years prior to the termination of the ten-year period of the Paramount distribution contract, the value, if any, of the right to receive a percentage of receipts for the additional three years would be reflected in the law firm's share of the residual value of the picture at the end of the seven-year period.

The Tax Court concluded that taxpayer's law firm parted with "nothing but the bare legal title to their partnership interest, * * * which, so far as this record shows, had no value to anyone. They retained the entire economic substance of their partnership interest and parted with an economic nullity. No sale or exchange of a capital asset within the meaning of section 1221 of the Internal Revenue Code of 1954 took place." Roth v. Commissioner, 38 T.C. 171, 174 (1962).

█ █ 1. Taxpayer does not contest the Tax Court's premise that a transaction lacking economic substance is not entitled to capital gains treatment even though it may satisfy the statute's formal requirements. Nor could he; the standards of the statute are to be read in the light of Congress's purpose (Commissioner v. Gillette Motor Transport Co., 364 U.S. 130, 134–135, 80 S.Ct. 1497, 4 L.Ed.2d 1617 (1960)), and must be met genuinely and not merely in form. Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 266–267, 78 S.Ct. 691, 2 L.Ed. 2d 743 (1958). We have applied these

rules to purported transfers of partnership interests. Haggard v. Wood, 298 F.2d 24, 26–28 (9th Cir. 1961); Trousdale v. Commissioner, 219 F.2d 563, 566–568 (9th Cir. 1955). See also Holt v. Commissioner, 303 F.2d 687 (9th Cir. 1962).

█ It is taxpayer's contention that the Tax Court's factual premise is false, and that the contract of August 9, 1954 did in fact convey substantial economic interests from taxpayer's law firm to the corporation. The burden of proof as to this ultimate issue rested upon the taxpayer; he was required to establish the existence of the facts prerequisite to capital gains treatment. Cohn v. Commissioner, 226 F.2d 22, 24 (9th Cir. 1955); see also Haggard v. Wood, supra, 298 F.2d at 25. The finding of the Tax Court that the transaction upon which taxpayer relied lacked reality for tax purposes is not to be set aside unless clearly erroneous. Trousdale v. Commissioner, supra, 219 F.2d at 566.

The contract of August 9, 1954 under which the law firm retained its entire share of the income from the partnership's only income-producing asset for a term of years, as well as the residual value of that asset at the end of the term, would seem on its face to lack substance when the question presented is whether the income payments are entitled to the preferential treatment accorded receipts from the sales exchange of capital assets.[1] The transaction did not alter the amount of these payments, or the time of their receipt; it did not result in "bunching" income accrued over a period of years, or in changing the time at which income was received and tax liability incurred. It did not terminate taxpayer's investment risk in the property; his return depended upon how the picture fared in the market, and remained exactly what it would have been had the transaction not occurred. To allow capital

[1]. The tax status of the amount taxpayer might later receive as his share of the residual value of the picture was not in issue; the only question before the Tax Court was the status of payments to taxpayer representing his share of the partnership's gross receipts under the Paramount distribution contract during 1955 and 1956.

gains treatment in these circumstances would permit a direct conversion of ordinary income into capital gain; it would serve none of the policies underlying preferential tax treatment of receipts from the sale or exchange of capital assets. See generally, Surrey & Warren, Federal Income Taxation 679, 770–71 (1960); A.L.I., Definitional Problems in Capital Gains Taxation 6–17, 182–95 (1960).

The only evidence offered by taxpayer that the contract of August 9, 1954 transferred anything of economic significance was the testimony of taxpayer and his law partner that they had relinquished: (1) ownership of the picture itself, and control over its disposition; (2) a share of gross receipts during the last three years of the ten-year term of the Paramount distribution contract; and (3) an *obligation running from* Paramount, rather than from the corporation which "purchased" the interest of taxpayer's law firm.

We think the Tax Court properly concluded that taxpayer was deprived of nothing of economic consequence by the transfer of the law firm's interest in the bare legal title to the picture or by the shortening of the period of entitlement to receipts by three years. And taxpayer made no effort to show what economic value, if any, might be attributed to the substitution of the corporation for Paramount as a creditor, or to the relinquishment by taxpayer's law firm of such control over the future disposition of the picture as its 3.2% interest in the partnership may have given the law firm.

In this Court the taxpayer has also contended that the contract of August 9, 1954 transferred rights in the book upon which the picture was based, legitimate stage rights, and rights to the music written for the picture. No mention was made of these interests in the contract of August 9, 1954, and there was nothing

to indicate that the parties to the contract considered them to have value. There was no reference to these interests in the pleadings before the Tax Court nor at any point in the hearing.

■ We think it evident that taxpayer failed to carry his burden of proof, and that the finding of the Tax Court that nothing of economic substance passed by the contract of August 9, 1954 was supported by the record.

2. Moreover, the result reached by the Tax Court was correct even if the contract of August 9, 1954 did involve a genuine transfer of substantial partnership rights.

The transaction would then satisfy the general rule of Section 741 of the Internal Revenue Code of 1954, which provides that the sale or exchange of a partnership interest is to be considered a sale or exchange of a capital asset except as provided in Section 751.[2] But Section 751, thus brought into play, excludes from capital gain treatment any portion of the consideration received for a partnership interest which is attributable to "unrealized receivables" of the partnership. The latter are defined, so far as pertinent, as including "any rights (contractual or otherwise) to payment for * * * goods delivered, or to be delivered, * * * or * * * services rendered, or to be rendered. * * *"

■ It may be conceded that the partnership right to payments under the Paramount distribution contract does not fall clearly within the definition of the term "unrealized receivables." But neither is it clearly excluded. This ambiguity, plus the rule requiring narrow construction of the definition of capital assets and broad construction of exclusions from its reach (Corn Prods. Refining Co. v. Commissioner, 350 U.S. 46, 52, 76 S.Ct. 20, 100 L.Ed. 29 (1955)), is enough to compel reference to the legis-

2. The general rule stated in Section 741 was a codification of existing law. H.R. Rep. No. 1337, 83d Cong., 2d Sess. (1954), 1954 U.S.Code Cong. & Admin. News, at 4096; S.Rep. No. 1622, 1954

U.S.Code Cong. & Admin.News, at 4729. The cases are collected in Sherlock v. Commissioner, 294 F.2d 863, 865–866 (5th Cir.1961). See 6 Mertens, Federal Income Taxation § 35.55 at 170.

lative history. Cf. Commissioner v. Bilder, 369 U.S. 499, 504, 82 S.Ct. 881, 8 L.Ed.2d 65 (1962); Flora v. United States, 357 U.S. 63, 65, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958).

■ The legislative history of Section 751 is itself not wholly clear, but we think it supports a sufficiently broad reading of the statutory language to include the partnership's right to payments under the Paramount distribution contract.

The Report of the Senate Committee states, "The term 'unrealized receivables' applies to *any rights to income* which have not been included in gross income under the method of accounting employed by the partnership." S.Rep.No.1622, 83d Cong., 2d Sess. (1954), 1954 U.S. Code Cong. & Admin.News, at 4732. (Emphasis added.) Essentially the same language appears in the Report of the House Committee. H.R.Rep.No.1337, 1954 U.S.Code Cong. & Admin.News, at 4097.

■ The purpose of Congress in enacting Section 751 was "to prevent the conversion of potential ordinary income into capital gain by virtue of transfers of partnership interests * * *" S. Rep.No.1622, 83d Cong., 2d Sess. (1954), 1954 U.S.Code Cong. & Admin.News, at 4731; see also H.R.Rep.No.1337, 1954 U.S.Code Cong. & Admin.News, at 4096. It is reasonably clear from the discussion of Section 751 in both Senate and House Reports that Congress meant to exclude from capital gains treatment any receipts which would have been treated as ordinary income to the partner if no transfer of the partnership interest had occurred.

■ "The broad scope of the term unrealized receivables is limited only by the fact that it is confined to legal rights to income." 6 Mertens, Federal Income Taxation § 35.85 at 236. The partnership's right to payments under the Paramount distribution contract was of this character.[3]

■ If the payments to taxpayer under the August 9, 1954 contract were attributable in any part to the transfer of rights other than the right to receive future income, the burden was upon taxpayer "to assert and establish the fair value" attributable to the capital assets transferred. Tunnell v. United States, 259 F.2d 916, 919 (3d Cir. 1958). See also Commissioner v. Chatsworth Stations, Inc., 282 F.2d 132, 135 (2d Cir. 1960); cf. Helvering v. Taylor, 293 U.S. 507, 513-516, 55 S.Ct. 287, 79 L.Ed. 623 (1935). He made no effort to do so, contending instead that the whole of the sums received was entitled to capital gains treatment. From what appears in this record, the election was compelled by the fact that no evidence was available that the payments in issue were attributable in any perceptible measure to the "transfer" of any interest except the taxpayer's share of the right to future income under the Paramount distribution contract.

Affirmed.

---

**3.** Receipts from the sale of a partnership interest occurring prior to the effective date of Section 751 are treated as ordinary income to the extent that they are attributable to the transfer of a right to receive ordinary income in the future. See, e. g., Sherlock v. Commissioner, 294 F.2d 863, 866 (5th Cir. 1961); Tunnell v. United States, 259 F.2d 916, 917-919 (3d Cir. 1958); United States v. Snow, 223 F.2d 103, 108-109 (9th Cir. 1955). See also Holt v. Commissioner, 303 F.2d 687, 690-691 (9th Cir. 1962). If a more restrictive construction were now given to the exclusions in Section 751, Congress's effort to limit capital gain treatment in this area would have led to the directly contrary result.