George C. **WILKINSON** and Ruth S. Wilkinson, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

**Civ. A. No. 2017.**

United States District Court
S. D. Alabama, S. D.

Sept. 30, 1959.

Vincent F. Kilborn, Abraham A. Mitchell, Mobile, Ala., for plaintiffs.

Ralph Kennamer, U. S. Atty., Alfred P. Holmes, Jr., Asst. U. S. Atty., Mobile, Ala., J. J. Kilgariff, Atty., Dept. of Justice, Washington, D. C., for defendant.

DANIEL HOLCOMBE THOMAS, District Judge.

This is an action by husband and wife for recovery of federal income taxes allegedly erroneously paid for the year 1947. There are two aspects of the law suit. One poses the question of whether the loss incurred by plaintiff George C. Wilkinson upon the disposition of his interest in the partnership known as "Fro-Zit Foods Company", was an ordinary loss or a capital loss. The other aspect presents the problem of whether amounts withheld by the First National Bank of Mobile and credited to "Dealer Reserve" accounts on automobile sales financing agreements, were income to the taxpayers in the year withheld and credited.

Findings of Fact on "Loss" Aspect.

1. In 1946, the plaintiff constructed a plant with butchering and quick freezing facilities, and facilities for renting freezer lockers to the public. In order to construct this plant, the plaintiff purchased a lot and arranged for a $75,000 open-end construction mortgage from the First National Bank of Birmingham, Alabama.

2. On May 31, 1946, a partnership agreement was entered into by plaintiff, George C. Wilkinson, and Joseph A. Bailey, who had previously served as original manager of the plant. Bailey contributed $15,000 to the firm, which was called "Fro-Zit Foods Company". For this investment, Bailey received a $49/100$ths interest in the firm; Wilkinson retained a $51/100$ths interest.

3. On September 26, 1946, the open-end construction mortgage was cancelled, and a regular one for $50,000 was executed by plaintiff and wife, and Bailey and wife. All the real and personal property of the firm was pledged as security on the mortgage.

4. The business did not prove profitable, and the parties began to consider terminating the partnership relation. On January 23, 1947, they named one Guthrie, an employee of the plaintiff, as liquidator of the firm, in an agreement under which Guthrie, as agent, was

"* * * authorized by the partners to continue to operate such business as a going concern, or to do any and all things toward operating the business or closing it, or liquidating it, which we might do in our own proper persons."

5. Plaintiff, deciding to take a vacation and desiring to reduce current expenses, instructed Bailey and Guthrie to "shut off the power" in the plant during his absence. This they did not do because it would have resulted in the spoilage of all stored foods, or in the breach of all locker contracts. The disregarded instruction does not justify a finding by the Court that Wilkinson had an intent to abandon his partnership interest.

6. On May 17, 1947, the partners executed an agreement, the pertinent parts of which are set out below:

"2. That the First Party (Wilkinson) does hereby transfer, set over, bargain, sell, assign and convey to the Second Party (Bailey) all his right, title, interest and claim, whether legal, equitable or statutory of whatsoever kind or wheresoever situate, in and to all and singular the business, and goodwill of the said Fro-Zit Foods Company to be his absolutely without reservation of any nature in and to the First Party."

\*    \*    \*    \*    \*    \*

"6. That the Second Party does further agree to take over and assume all liability for the balance due and outstanding for and under that certain mortgage heretofore executed by the Parties hereto and the former co-partnership, on, to-wit, the 26th day of September, 1946, to the First National Bank of Birmingham, Alabama, covering all the said property described in Paragraph No. 4 hereof \*  \*  \* "

Under paragraph No. 4 of this agreement, plaintiff also agreed to execute a conveyance to Bailey of all his rights, title and interest in the real property, fixtures and personal property owned by the partnership; and in accordance with this provision, plaintiff executed a deed to Bailey which was dated May 20, 1947.

7. The agreement of May 17, 1947, evidences that the parties considered themselves partners until the execution of the agreement.

8. Plaintiff and defendant agree that the plaintiff sustained a loss of $40,551.-40 from this transaction.

### Findings of Fact on "Dealer Reserve" Aspect.

1. The plaintiff further alleges that taxes were erroneously paid on sums which were held by the First National Bank of Mobile, Alabama, in a so-called "Dealer Reserve" account.

2. During the calendar year 1947, Wilkinson owned an interest in, or was associated with, a number of businesses. Among these were two automobile businesses and a finance company. "Downtown Motors", a partnership, and "Standard Motors", a sole proprietorship, were used-car dealers in Mobile, Alabama. "First Finance Company", a partnership, was organized to finance the automobiles sold by these two automobile dealers.

3. The plaintiff entered into a financing agreement [1] with the First National

---

1. This agreement provided that the bank would purchase or discount such conditional sales contracts made by the dealers under the following terms: "From the amount due by the buyer on the contract or mortgage, the Bank shall deduct its discount, the premiums on the insurance which Bank is to take out as hereinafter provided (which premiums shall not necessarily be the cost to Bank of such insurance); the balance remaining, not to exceed the unpaid balance of the price of which the car was sold (without inclusion of any financing charges or other charges imposed on buyer), shall then be paid or credited by Bank to Dealer. Any balance then remaining shall be credited to a special account, and such balance so credited thereto and said special account shall be deemed forthwith pledged by Dealer to the Bank, as collateral security, for the payment by Dealer of such sums as he may then or thereafter owe, from time to time, hereunder, and shall remain so pledged so long as any paper is being financed hereunder."

Bank of Mobile, Alabama, wherein the bank agreed to finance certain automobile sales made by the plaintiff. The agreement carried with it a condition that an amount computed according to a formula [2] would be set aside in an account labeled "Dealer Reserve".

4. The plaintiff would sell both new and used automobiles on the installment basis, and the notes and contracts regularly received on these sales were assigned to the bank under said agreement. Upon such an assignment, the bank would credit the plaintiff's general account with a portion of the sale price and the remainder, according to the formula, would be credited to the "Dealer Reserve". The bank's consideration for the discounting was paid by the plaintiff according to a schedule set forth in the agreement between the bank and the plaintiff.

5. The credit to the plaintiff's general account and to the "Dealer Reserve" account was made immediately upon the assignment of the contracts, even though the proceeds from the said contracts would not be collected for some time, i. e., until the purchaser of the automobile paid the note in full.

6. During the year 1947, in accordance with the agreement, the bank charged off to the special "Dealer Reserve" account in the name of Downtown Motors, the sum of $655.40; charged off to the account in the name of Standard Motors, the sum of $1,864.05; and to the "Dealer Reserve" account in the name of First Finance, the sum of $34,-806.65. It is these amounts that were considered by the Commissioner of Internal Revenue to be taxable income; and that the plaintiff now contends were

contingent, and not accruable income, for the year 1947.

### Conclusions of Law.

1. The Court has jurisdiction of this suit. U.S.C. Title 28, § 1346.

#### As to the "Loss Aspect".

2. Where partners evidence, by their agreements or their conduct, that they intend certain real property to be partnership property, it will be so treated in equity, where necessary for payment of debts or the settlement of accounts between partners, regardless of the nominal title. Causler v. Wharton, 62 Ala. 358; Davis v. Smith, 82 Ala. 198, 2 So. 897; Long v. Slade, 121 Ala. 267, 26 So. 31.

3. Although, under Alabama law, legal title to real property cannot vest in a partnership as such, Sealy v. Lake, 243 Ala. 396, 10 So.2d 364, a gain or loss from the disposition of a partnership interest which encompasses real property, is treated for tax purposes as arising from the sale of the partnership interest, and not from a sale of the specific real property. 26 U.S.C.A. § 117 (1939).

4. The cases [3] decided under the Internal Revenue Code of 1939 conclude, overwhelmingly, that interest in a partnership is a capital asset. Therefore, plaintiff's sale of his interest on May 17, 1947, was of a capital asset and consequently, resulted in a capital loss.

5. Plaintiff urges that the May 17, 1947, transaction was a distribution of assets in kind, followed by a sale of the assets to Bailey. The clear terms of the agreement negate such a construction. Execution of the quitclaim deed three

---

2. The formula roughly was as follows:
The bank would pay or credit to the plaintiffs' general account an amount not to exceed the lesser of: (1) the unpaid balance of the sales price without the inclusion of any financing or other charges imposed by the plaintiffs; or (2) the National Automobile Dealers Association average loan value. The bank would credit any balance remaining on the purchase price of the paper to the "Dealers

Reserve" account standing in the name of the plaintiffs which was forthwith pledged as collateral security for any sums then or thereafter owing by plaintiff.

3. First National Bank of Mobile v. Commissioner of Internal Revenue, 5 Cir., 1950, 183 F.2d 172; United States v. Shapiro, 8 Cir., 1949, 178 F.2d 459; Meyer v. United States, 7 Cir., 1954, 213 F.2d 278.

days later was but a formality, and purported only to convey the realty. There was no abandonment of the assets as such by plaintiff because they were never distributed to him.

6. It is the contention of the plaintiff that his instructions to Bailey and the agent, Guthrie, to "shut off the power" in the plant, evidenced an intention on his behalf to abandon his partnership interest. Abandonment is a question of intention. International News Service v. Associated Press, 248 U.S. 215, 39 S. Ct. 68, 63 L.Ed. 211. In Helvering v. Jones, 8 Cir., 1941, 120 F.2d 828, 830 the court in referring to real property said:

"A mere intention to abandon is ineffectual unless coupled with a voluntary relinquishment of possession and control. To abandon real property there must be a concurrence of the act of leaving the premises vacant and unoccupied with the intention of not returning. There must be some clear and unmistakable affirmative act indicating a purpose to repudiate ownership."

Here, we see that when Wilkinson went on his vacation, he left two general agents in charge, with authority to carry on the business; and that upon his return, he continued to conduct himself as a partner. The Court is unable to determine that plaintiff intended to abandon even the operation of the business, much less his entire interest in the partnership.

7. The plaintiff did not abandon his partnership interest by transferring it to Bailey. In support of his argument that a partnership interest can be abandoned, plaintiff cites the cases of Gannon v. C. I. R., 1951, 16 T.C. 1134 and Hutcheson v. C. I. R., 1951, 17 T.C. 14. In each of these cases, a member of a law partnership agreed that if he should resign, his partnership interest should be forfeited. In each instance, the Tax Court held that because there was no "sale or exchange" of the assets, the capital loss provisions did not apply, and that the loss was therefore ordinary and deductible in full. Whether or not a partnership interest can be abandoned where there is no forfeiture clause, is a novel question, but one which need not be decided here. If there was a "sale or exchange" of the partnership interest, the loss was a capital one. If there was a "sale or exchange" of the partnership interest, principles of abandonment are rendered inapplicable.[4] Drawing again from analogous cases involving real property, the rule is that if a mortgagor conveys his interest for a release of liability, or for the slightest monetary consideration, a "sale or exchange" results.[5] Here, the plaintiff received consideration because he was relieved of personal liability on the mortgage to the First National Bank of Birmingham, and because the agreement of May 17, 1947, recited a consideration of $10 passing to the plaintiff. It follows that there was a "sale or exchange" and that under the facts, a case of abandonment does not appear.

### As to "Dealer Reserve" Aspect.

■ 8. Plaintiff contended that the taxes paid on the "Dealers Reserve" account were paid erroneously, citing as authority Texas Trailercoach, Inc. v. C. I. R., 5 Cir., 1958, 251 F.2d 395. The arrangement revealed by the facts of this case is very similar in nature to that discussed in Commissioner of Internal Revenue v. Hansen, dated June 22, 1959, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360. It is true that up until the time of the Hansen decision, there existed doubt as to whether or not amounts collected under so-called "Dealers Reserve" accounts were contingent, or accruable as income in the year withheld. The Hansen decision has removed that doubt from

4. Blum v. C. I. R., 2 Cir., 1943, 133 F. 2d 447; Commissioner of Internal Revenue v. Crane, 2 Cir., 1945, 153 F.2d 504.

5. Stamler v. C. I. R., 3 Cir., 1944, 145 F. 2d 37; Blum v. C. I. R., supra; Commissioner of Internal Revenue v. Crane, supra; R. O'Dell & Sons Co. v. C. I. R., 3 Cir., 1948, 169 F.2d 247, 3 A.L.R.2d 635.

the field of tax law. It therefore follows that under the ruling of the Hansen case, the amounts collected under the "Dealers Reserve" account arrangement with the First National Bank of Mobile are accruable as income in the year so withheld, in this case 1947.

Judgment in accordance herewith.