CHARLES F. PHILLIPS AND RUTH PHILLIPS, PETITIONERS, *v.* COM-MISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 92352.   Filed April 26, 1963

*Sidney Gelfand*, for the petitioners.
*Henry G. Nagel*, for the respondent.

**OPINION**

Murdock, *Judge:* The explanation of the determination states first that "$10,954.01 ($11,704.01 principal less expenses of $750.00)" was included in gross income because "it represents payment for past services rendered." The parties stipulated "that no part of the $11,704.01 received by petitioner in 1958 represents past services rendered to the Harry C. Miller Co. partnership" but the Commissioner contends that the deficiency notice was intended to refer to past services rendered by Charles to Garcia and paid by Garcia through Miller. The evidence shows that there is no merit in that contention, if it could be fairly read into the deficiency notice. The only services rendered Garcia by Charles were rendered on behalf of the partnership and were paid for in full to the partnership. Garcia did not owe Charles for any past services, never agreed to pay him the $11,704.01 or any other amount for past services, and did not pay him anything for past services to it through Miller or in any other way.

The other reason given in the deficiency notice for including the $10,954.01 in gross income was that it represented payment "for 'unrealized receivables' within the purview of Section 735(a) and 751(a) and (c)." This reason also is refuted by the evidence which shows that the partnership collected and reported as income all amounts due it, which amounts were in turn reported by Miller and Charles and are not involved herein; there were no "unrealized receivables"; and no part of the $11,704.01 represented receivables of any kind. Furthermore, Miller, not the partnership, paid the $11,704.01 to Charles.

The $11,704.01 was an amount which Miller agreed to pay to Charles out of commissions which he (Miller) might earn subsequently by performing services for Garcia and which he paid from that source as he had agreed. It was never income or funds of the partnership.

Thus the petitioners have overcome the presumption of correctness attached to the Commissioner's determination as explained in his notice of deficiency.

The Commissioner filed at the opening of the trial an amendment to his answer by which he added an allegation "That the amount of $11,704.01 received by the petitioners in 1958 from Harry C. Miller is taxable at ordinary income tax rates under the provisions of section 702, 736 and 1222 of the Internal Revenue Code of 1954." He did not plead any facts in his answer to support or explain that allegation. The Court tried unsuccessfully to learn what was meant by the amendment. The petitioners denied the allegation in a reply. The Commissioner argues in his brief that there was no sale to support a long-term capital gain and "The payments received by petitioner were made in liquidation of his interest in the Harry C. Miller Co. partnership and are taxable as ordinary income under the provisions of section 736 (a) (1) of the Internal Revenue Code of 1954."

This amendment and the argument made thereunder are contrary, in one respect at least, to the determination made in the notice of deficiency which is presumed to be correct. That determination was that only "$10,954.01 ($11,704.01 principal less expenses of $750.00)" was includable in gross income and the Commissioner, to reverse himself as to the $750, would have to allege and prove facts to show that the $750 should now be disallowed as expenses and taxed as income. He has done neither and his original treatment of the $750 may not be changed.

The argument made on the point raised in the amendment to the answer is quite different from the reasons expressly set out in the deficiency notice and the petitioners argue strenuously that the Commissioner must assume the burden of proof on this point. If he has that burden then his pleadings are inadequate since he alleges no facts. He definitely has the burden of proving any facts not properly a part of the petitioners' burden before the amendment.

The Commissioner argues that no sale took place and his determination was based upon the absence of a sale and so is his new contention. His amendment is based upon sections 702, 736, and 1222. Section 702 provides how income of a partnership is to be reported by a partner but the money here in question was never income of the partnership and there is no allegation in the pleadings that it was income of the partnership. Section 1222 defines long-term capital gain as the gain from the sale or exchange of a capital asset held for more than 6 months. Charles' interest in the partnership was a valuable capital asset which he had held for more than 6 months. It was not a partnership asset.

Section 736 (a) (1), upon which the Commissioner relies in his brief, provides that "Payments made in liquidation of the interest

of a retiring partner * * * shall, except as provided in subsection (b), be considered—(1) as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, * * *." The Commissioner concedes on page 22 of his brief that this section applies only "to payments made by the partnership and not to transactions between the partners. That would seem to end the matter since here the agreement was between the partners, the amounts to be paid Charles were not to be paid by the partnership but were to come only from future earnings of Miller, and were to be paid by him. The partnership earned nothing after March 31, 1958, and ceased to exist.

Furthermore, the amounts to be paid Charles by Miller pursuant to their agreement of March 25, 1958, were not determined by them with regard to the income of the partnership. Charles talked with Lenk about those amounts but Lenk was not a contracting party and had no authority to represent either contracting party. Charles never negotiated with Miller with respect to these payments. Miller, on the witness stand, was asked, "Did you have any connection at all with the negotiations leading up to this provision?" and he answered, "No, none whatever." He wanted to rid himself of an undesirable partner; he did not want the customers of the business to know of the change; Lenk urged him to agree to make the payments; he wanted the Garcia business all for himself; and to accomplish the desired result he bought out Charles' interest in the partnership business. Section 741 applies rather than section 736(a)(1) since it is reasonable to conclude from a fair preponderance of the evidence that the transaction was a sale resulting in a long-term capital gain as reported by Charles.

*Decision will be entered under Rule 50.*