*Decisions will be entered under Rule 50.*

ANDREW O. STILWELL AND CHARLOTTE C. STILWELL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5080-64. Filed May 17, 1966.

*Donald S. Day*, for the petitioners.
*Ernest Honecker*, for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency in the income tax of the petitioners for the calendar year 1962 in the amount of $3,549.06. Petitioners have conceded the inclusion of certain additional items of income. The sole remaining issue is whether petitioner husband suffered a capital loss or ordinary loss from his failure to recover his capital account upon the dissolution of a partnership during the taxable year.

FINDINGS OF FACT

This is a fully stipulated case. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Andrew O. Stilwell and Charlotte C. Stilwell are husband and wife and filed a joint Federal income tax return for the calendar year 1962 with the district director of internal revenue, Buffalo, N.Y. Charlotte C. Stilwell is a party to this proceeding only because she signed the joint return. Any reference to the petitioner herein shall be deemed to refer to Andrew O. Stilwell.

On September 1, 1954, petitioner entered into an agreement in writing with one Salem Forsythe (hereinafter referred to as Forsythe), whereby they formed a partnership under the name of Forsythe & Stilwell Co. The business of the partnership was to distribute fabricated building materials, represent various companies as selling agents, and act as wholesalers.

Petitioner's $10,000 capital contribution represented the partnership's total initial capital. Forsythe contributed no cash or other assets. Forsythe was to be paid, from the annual profits of the business, the sum of $9,600 a year at the rate of $800 per month, "which shall be in the nature of a drawing account against Forsythe's share of the profits." In the event that the annual profits were insufficient, the "drawing account shall be paid out of the capital of the partnership." The agreement further provided that the balance of profits in excess of Forsythe's drawing account, after certain adjusting distributions, was to be paid two-thirds to Forsythe and one-third to petitioner.

The partnership agreement was amended on January 1, 1958, and on January 1, 1959, to provide an increased drawing account to Forsythe and a drawing account to petitioner. The January 1, 1958, amendment modified the provisions governing dissolution so as to provide that, after the $10,000 had been repaid to Stilwell, any unpaid balance of the weekly drawing accounts for the year in which dissolution takes place was to be distributed to each partner. Any remaining profits were to be distributed in accordance with the basic ratio, which was changed by the amendment of January 1, 1959, to 75 percent to Forsythe and 25 percent to petitioner. The provision changing the ratio contained the following sentence: "As provided in the preceding paragraph, the drawing account paid a partner shall be charged against his share of the profits or his share in the partnership assets."

Neither the agreement nor any of the amendments thereto contained any provision expressly dealing with excess withdrawals by either of the partners.

In January 1962, Forsythe and petitioner in fact ceased doing business together as partners. By agreement dated October 1, 1962, they mutually agreed to terminate and dissolve the partnership. In accordance with the agreement, all partnership assets were distributed to Forsythe. Forsythe assumed and agreed to pay all of the debts of the partnership and to indemnify, defend, and hold petitioner harmless from any payments or claims as a result of any indebtedness of the partnership.

The balance sheet of the partnership immediately prior to dissolution on October 1, 1962, showed the following:

| Assets | | Liabilities | |
|---|---|---|---|
| Cash | $24.59 | Accounts payable | $32,703.74 |
| Notes and accounts receivable | 10,785.70 | Mortgages, notes | 19,087.00 |
| Inventory | 900.00 | Partners' capital accounts | (37,566.35) |
| Fixed depreciable assets (furniture and fixtures) | 2,514.10 | | |
| Total | 14,224.39 | Total | 14,224.39 |

The item of $37,566.35 listed on the balance sheet as a deficit in the partners' capital accounts consisted of a debit balance against Forsythe of $61,483.49 and a credit balance in favor of petitioner of $23,917.14.

At the time of the execution of the dissolution agreement, petitioner executed and delivered to Forsythe a general release in standard form.

Petitioner held his interest in the partnership for more than 6 months. On October 1, 1962, immediately prior to dissolution, the basis of petitioner's interest was $23,917.14 plus his share of the partnership liabilities.

### OPINION

Respondent has conceded that petitioner suffered a deductible loss from the termination of the partnership in 1962.[1] Respondent takes the position, however, that the 1962 transaction between petitioner and Forsythe constituted a sale by petitioner of his partnership interest rather than a distribution in liquidation of the partnership and that, consequently, petitioner is limited to a capital loss under section

---

[1] It is not entirely clear from the record that petitioner in fact suffered such a loss. It would appear that the loss resulted from Forsythe's excess withdrawals. Absent any agreement to the contrary between the partners, Forsythe would be obligated to refund such excess. See 1 Rowley, Partnerships 465 (2d ed. 1960). Any such repayment would have provided sufficient funds to pay the debts of the partnership and to restore petitioner's capital account, with the possible exception of the unpaid drawing account of Forsythe for the month of January 1962. Furthermore, Forsythe's excess withdrawals occurred in prior taxable years. If he had no obligation of repayment, they would appear to be guaranteed payments properly chargeable as an expense of the partnership in those years, thereby decreasing petitioner's share of the profits or giving rise to a loss on the part of petitioner during those years. See sec. 1.707–1(c), Income Tax Regs.

741.[2]  We disagree with respondent on this score.  The October 1, 1962, agreement stated that "the partners desire to terminate and dissolve said partnership" and that "The parties hereto hereby terminate and dissolve the partnership."  It was further provided that "all partnership assets" be transferred to Forsythe and that he pay the indebtedness due the bank and "all other indebtedness of the partnership."  There is not a single phrase which usually accompanies a sale, such as "does hereby transfer, set over, bargain, sell, assign and convey."  *Wilkinson* v. *United States*, 177 F. Supp. 101 (S.D. Ala. 1959), heavily relied upon by respondent, is clearly distinguishable on this basis.  Cf. *David A. Foxman*, 41 T.C. 535 (1964), affd. 352 F. 2d 466 (C.A. 3, 1965) ; *Charles F. Phillips*, 40 T.C. 157 (1963) ; *Virgil L. Beavers*, 31 T.C. 336 (1958) ; *B. Howard Spicker*, 26 T.C. 91 (1956).

Nor does the fact that petitioner received "consideration" by being relieved of his share of the partnership liabilities require a different result.  Such "consideration" may be equally present when a partnership is liquidated.  Carried to its logical conclusion, respondent's argument would require us to hold that there was a sale in almost every situation involving the liquidation of a two-man partnership.  Respondent's own regulations under section 741 do not go this far; they simply provide that the section is applicable "to the transferor partner in a 2-man partnership *when he sells his interest* to the other partner."  (Emphasis added.)   Sec. 1.741–1 (b), Income Tax Regs. We hold that petitioner did not effect a "sale" of his partnership interest to Forsythe within the meaning of section 741.

Such a conclusion does not, however, dispose of the matter.  Section 736(b) (1) provides that "Payments made in liquidation of the interest of a retiring partner * * * shall * * * be considered as a distribution by the partnership," subject to certain exceptions not here material. Section 731(a) sets forth the consequences of a distribution by the partnership as follows:

SEC. 731. EXTENT  OF  RECOGNITION  OF  GAIN  OR  LOSS  ON DISTRIBUTION.

   (a) PARTNERS.—In the case of a distribution by a partnership to a partner—

     (1) gain shall not be recognized to such partner, except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution, and

     (2) loss shall not be recognized to such partner, except that upon a distribution in liquidation of a partner's interest in a partnership where no

---

[2] All references are to the Internal Revenue Code of 1954.

SEC. 741. RECOGNITION AND CHARACTER OF GAIN OR LOSS ON SALE OR EXCHANGE.

In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner.  Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items which have appreciated substantially in value).

property other than that described in subparagraph (A) or (B) is distributed to such partner, loss shall be recognized to the extent of the excess of the adjusted basis of such partner's interest in the partnership over the sum of—
    (A) any money distributed, and
    (B) the basis to the distributee, as determined under section 732, of any unrealized receivables (as defined in section 751(c)) and inventory (as defined in section 751(d) (2)).

Any gain or loss recognized under this subsection shall be considered as gain or loss from the sale or exchange of the partnership interest of the distributee partner.

If the transaction herein is covered by the last paragraph of section 731(a), the loss will be a capital loss under section 741.

Respondent argues that Forsythe's assumption of petitioner's share of the partnership liabilities constituted a "distribution" within the meaning of section 731 and that section 731(a) in conjunction with section 741 requires a finding of capital loss. Petitioner, on the other hand, seeks to avoid the effect of these sections by arguing that Forsythe's assumption of petitioner's share of the partnership liabilities did not constitute a "distribution." We hold for respondent.

Section 752(a) provides that "Any increase in a partner's share of the liabilities of a partnership * * * shall be considered as a contribution of money by such partner to the partnership." In other words, the basis of his partnership interest is increased. And section 752(b) provides that "Any decrease in a partner's share of the liabilities of a partnership * * * shall be considered as a distribution of money to the partner by the partnership." These two provisions are carried into the regulations dealing with the determination of gain or loss in connection with payments to a retiring partner. See sec. 1.736-1(a) (2), sec. 1.736-1(b), and sec. 1.752-1, Income Tax Regs. Since a partner's share of the partnership liabilities is added to the basis of his partnership interest, it necessarily follows that an assumption of that share by the partnership or other partner or partners must constitute a distribution. See A.L.I., Joint Committee on Continuing Legal Education, Federal Income Taxation of Partners and Partnerships 203 (1957). Otherwise, a partner would have a loss which would at least in part be fictitious in the event of the disposition of his partnership interest.

Petitioner's reliance on *Gaius G. Gannon*, 16 T.C. 1134 (1951), and *Palmer Hutcheson*, 17 T.C. 14 (1951), is misplaced. There is no indication in either case that there were any partnership liabilities from which the taxpayer was relieved when he withdrew from the law partnership. Consequently, this Court held in each case that the taxpayer received nothing for his partnership interest and that the resulting "forfeiture" gave rise to a deductible ordinary loss. Moreover, these cases were decided under the Internal Revenue Code of 1939, which contained extremely sparse provisions dealing with the

taxation of partnerships. By way of contrast, the partnership sections of the Internal Revenue Code of 1954 were expressly designed to deal with this inadequacy and to provide "the first comprehensive statutory treatment of partners and partnerships in the history of the income tax laws." See H. Rept. No. 1337, 83d Cong., 2d Sess., p. 65 (1954). We hold that petitioner did not suffer a "forfeiture"[3] and that Forsythe's assumption of petitioner's share of the partnership liabilities constituted a "distribution" to him under section 731 which, in turn, resulted in a long-term capital loss under section 741. See A.L.I., *supra* at 98–99.

*Decision will be entered for the respondent.*

---

[3] We expressly refrain from deciding whether an absolute forfeiture would give rise to a capital or ordinary loss under the 1954 Code. Cf. *Larry E. Webb,* 23 T.C. 1035 (1955), decided under the 1939 Code. Compare Little, Federal Income Taxation of Partnerships, 155 (1957 supp.), with Rev. Rul. 66–93, 1966–1 C.B. 165.