*Decision will be entered under Rule 50.*

FRANK A. LOGAN AND MARGARET S. LOGAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2887–67. Filed December 26, 1968.

*Richard W. Iler*, for the petitioners.
*Frederick W. Krieg*, for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency of $2,146.19 in petitioners' income tax for the taxable year 1961. The only issue is the proper treatment of money received in 1961 from the sale in 1960 of a partnership interest owned by petitioner Frank A. Logan.

### FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly.

Petitioners are husband and wife and were legal residents of Anchorage, Ky., at the time of the filing of the petition herein. They filed a joint Federal income tax return for the taxable year 1961 with the district director of internal revenue, Louisville, Ky. Since petitioner Margaret S. Logan is before this Court only because she filed a joint return with her husband, subsequent references to petitioner should be taken to mean Frank A. Logan.

Prior to March 1959, petitioner practiced law as a sole proprietor in Louisville. On March 1, 1959, he and Thomas S. Dawson (Dawson) formed a law partnership under the name of Logan & Dawson, agreeing to share profits and losses equally. Petitioner contributed assets to the partnership with an adjusted basis of $9,654.36. Dawson contributed no assets to the partnership. The partnership assumed a $7,500 personal note owed by petitioner but assumed no liability of Dawson's.

When the partnership was formed, petitioner had legal work in progress, some on a contingent fee basis, all of which had a zero basis. Petitioner contributed this work to the partnership, so that when the fees of some $60,000 were received therefor they became partnership income, rather than petitioner's personal income.

In 1960, the petitioner decided to retire from active practice of law. Dawson agreed to buy his interest in the assets of the partnership and to assume all the liabilities of the partnership. On the date of the sale, the partnership had work in progress (unbilled fees), with a zero basis, which had not been completed and which, therefore, had not been billed. None of this work in progress was covered by express agreement with the client. The liabilities of the partnership were $6,179.51.

The agreement between petitioner and Dawson dated July 1, 1960, provided in part that:

(2) Except as hereinafter provided in Paragraph 4, Logan agrees to and does hereby sell, assign and transfer to Dawson all of his right, title and interest in all the assets of every kind and nature of said partnership firm of Logan & Dawson, including but not limited to all unbilled fees and all physical assets of the partnership, such as books, files and records, office furniture, fixtures and equipment, lease and leasehold improvements at 606 Kentucky Home Life Building, Louisville, Kentucky, cash on hand, all accounts receivable, and the goodwill of the partnership. * * *

(3) Dawson will assume and does hereby assume and agrees to pay all the liabilities of the firm of Logan & Dawson accrued or accruable at June 30, 1960, and in addition to other valuable considerations which Logan hereby acknowledges, Dawson will pay to Logan the sum of $10,000 for Logan's entire interest in the unbilled fees due to the partnership of Logan & Dawson, and in addition thereto Dawson will also pay to Logan the sum of $8,000 for Logan's entire interest in the net partnership assets of Logan & Dawson at June 30, 1960. Said sums shall be paid by Dawson to Logan in monthly installments of $1,000 each, the first such monthly installment to be due and payable on August 1, 1960, with each subsequent installment becoming due and payable on the first day of each month thereafter until the entire amount has been paid. It is agreed that the first ten monthly installments as herein provided shall be allocated to and shall be in payment of the $10,000 agreed to be paid for Logan's interest in unbilled partnership fees and that the last eight monthly installments shall be allocated to and be accepted in payment of the $8,000 herein agreed to be paid to Logan for his entire interest in the net partnership assets at June 30, 1960.

The term "unbilled fees," as used in the aforesaid agreement, was intended to cover the partnership's right to payment for services rendered prior to the date of sale for which payment had not been received.

Petitioner's initial basis in his partnership interest was $5,904.36. Petitioner's distributive share of the partnership profits was $50,467.52 over the life of the partnership; his total withdrawals were $44,453.02. Petitioner received $21,089.75 from the sale, consisting of $6,000 in cash and $3,089.75 in the form of an assumption by Dawson of petitioner's share of the partnership liabilities received in 1960 and $12,000 received in 1961. Petitioner's basis in his partnership interest at the time of sale was $11,258.61.

Under the dissolution agreement, $4,000 of the amount received in 1961 was attributable to petitioner's interest in the "unbilled fees" of the partnership and $8,000 to his remaining interest.

OPINION

On July 1, 1960, petitioner sold his interest in the assets of a two-man law partnership to his partner, Dawson. The parties agree that the transaction should be treated as a sale under section 741 [1] rather than a liquidation of the partnership under section 736. Compare *David A. Foxman*, 41 T.C. 535 (1964), affd. 352 F. 2d 466 (C.A. 3, 1965), with *Andrew O. Stilwell*, 46 T.C. 247 (1966). Secs. 1.736–1(a)(1)(i) and 1.741–1(b), Income Tax Regs. There is also no disagreement that the $21,089.75 realized by petitioner from the sale ($18,000 in cash and $3,089.75 through the assumption by Dawson of petitioner's share of the partnership liabilities) should be allocated as provided in the

---

[1] All references, unless otherwise noted, are to the Internal Revenue Code of 1954.

agreement of sale. The dispute herein involves two issues: (1) Did the $4,000 which petitioner received in 1961 for his interest in work in progress at the time of the sale (unbilled fees), which had a zero basis to the partnership, constitute a payment attributable to "unrealized receivables" and therefore taxable ordinary income under section 751?[2] (2) What was petitioner's basis in his partnership interest for the purpose of determining his gain or loss upon receipt of the $8,000 balance of the purchase price in that year?

Petitioner argues that, since there were no express agreements between the partnership and its clients with respect to the work in progress, the partnership had only rights *in quantum meruit* to collect fees therefor. *Commonwealth* v. *Sizemore*, 269 Ky. 722, 108 S.W. 2d 733 (1937); *Gilbert* v. *Walbeck*, 339 S.W. 2d 450 (Ky. 1960). He therefore concludes that, at the time of sale, the partnership had no "right (contractual or otherwise) to payment for * * * services rendered or to be rendered" and thus no "unrealized receivables" within the meaning of section 751(c), with the result that the payment received for the "unbilled fees" is entitled to capital gains treatment. In so concluding, he points to respondent's regulations:

The term "unrealized receivables" * * * means any rights (contractual or otherwise) * * * to payment for—

(ii) Services rendered or to be rendered, to the extent that income arising from such rights to payment was not previously includible in income under the method of accounting employed by the partnership. *Such rights must have arisen under contracts or agreements in existence at the time of sale or distribution,* although the partnership may not be able to enforce payment until a later time. For example, the term includes trade accounts receivable of a cash method taxpayer, and rights to payment for work or goods begun but incomplete at the time of the sale or distribution. [Sec. 1.751–1(c)(1)(ii), Income Tax Regs. Emphasis added.]

Section 751 was enacted "to prevent the conversion of potential ordinary income into capital gain by virtue of transfers of partner-

---

[2] SEC. 751. UNREALIZED RECEIVABLES AND INVENTORY ITEMS.

(a) SALE OR EXCHANGE OF INTEREST IN PARTNERSHIP.—The amount of any money, or the fair market value of any property, received by a transferor partner in exchange for all or a part of his interest in the partnership attributable to—

(1) unrealized receivables of the partnership, * * *

shall be considered as an amount realized from the sale or exchange of property other than a capital asset.

* * * * * * *

(c) UNREALIZED RECEIVABLES.—For purposes of this subchapter, the term "unrealized receivables" includes, to the extent not previously includible in income under the method of accounting used by the partnership, any rights (contractual or otherwise) to payment for—

(1) goods delivered, or to be delivered, to the extent the proceeds therefrom would be treated as amounts received from the sale or exchange of property other than a capital asset, or

(2) services rendered, or to be rendered.

ship interests." H. Rept. No. 1337, 83d Cong., 2d Sess., p. 70 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess., p. 98 (1954). See *Roth* v. *Commissioner*, 321 F. 2d 607, affirming 38 T.C. 171 (1962). If petitioner had remained in the partnership, he would eventually have shared in the payments for services performed by the partnership before July 1, 1960. His share would have been ordinary income to him. The $10,000 Dawson paid him for his interest in the work in progress on July 1, 1960, was thus a substitute for ordinary income. Compare *Herman Glazer*, 44 T.C. 541, 548 (1965), with *Charles F. Phillips*, 40 T.C. 157, 159 (1963). The fruit petitioner left on the partnership tree may not have been ripe, but it was nonetheless fruit. Compare *Watson* v. *Commissioner*, 345 U.S. 544 (1953).

The partnership clients were obligated to pay the firm reasonable compensation for work performed, whether the matters were pursued to completion or the services terminated prior thereto. Thus, under all circumstances, at the time of the sale the firm had a legal right to be paid for work done. At that time, its right was uncertain as to amount, but such uncertainty is not enough to avoid categorization as an "unrealized receivable." To be sure, such a right derives from an implied obligation, but it would be sheer semantic sophistry to construe "rights (contractual or otherwise)" to mean "rights arising under express contracts," as petitioner would have us do. Nor does the language of respondent's regulation require such a construction. The reference to "contracts or agreements in existence" clearly includes implied as well as express arrangements as shown by the example of "rights to payment for work * * * begun but incomplete at the time of the sale." See sec. 1.751–1(c) (1) (ii), *supra*.

We think that the right to an unbilled fee clearly falls within the ambit of section 751(c), which itself invites a liberal construction by stating that the phrase "unrealized receivables" *includes* certain specified rights, thereby implying that the statutory definition of the term is not necessarily self-limiting. Sec. 7701(b). Any other conclusion would frustrate the clearly expressed intention of Congress to give the phrase "unrealized receivables" broad application. See H. Rept. No. 1337, *supra* at 71, A235; S. Rept. No. 1622, *supra* at 99, 402. It would also be in derogation of the Supreme Court injunction that provisions according capital gains treatment should not be "so broadly applied as to defeat rather than further the purpose of Congress." See *Corn Products Co.* v. *Commissioner*, 350 U.S. 46, 52 (1955).

We hold that the $10,000 Dawson paid petitioner for his interest in the unbilled fees of the partnership was an amount attributable to unrealized receivables of the partnership. Accord, *United States* v. *Woolsey*, 326 F. 2d 287 (C.A. 5, 1963); *John Winthrop Wolcott*, 39 T.C. 538 (1962).

The second issue relates to the adjusted basis of partnership interest. The root of the disagreement lies in the treatment of the liabilities of the partnership. We agree with respondent's treatment.

When the partnership was formed, petitioner contributed property with a basis of $9,654.36. The partnership assumed one of his personal liabilities in the amount of $7,500. Theoretically, this assumption by the partnership is treated as a distribution of money to petitioner, with a consequent decrease in the basis of his partnership interest. Secs. 705(a)(2) and 752(b). On the other hand, petitioner was simultaneously entitled to increase his basis by one-half of this amount. Sec. 1.722–1, ex. (1), Income Tax Regs. His basis in the partnership was therefore $5,904.36 ($9,654.36 less $7,500 plus $3,750). The parties agree that petitioner's basis was subsequently increased by $6,014.50, representing the excess of petitioner's share of the profits over the amounts withdrawn during the life of the partnership. Sec. 705(a). Petitioner's one-half share in the decrease of the liabilities of the partnership from $7,500 to $6,179.51 on the date of sale is treated as a distribution of money (sec. 752(b)) and decreases his basis by $660.25. Sec. 705(a)(2).

Petitioner seeks to increase his basis in two ways. First, he argues that some amount representing work in progress which he brought into the firm at its inception, and for which some $60,000 in fees was ultimately received, should be included. We disagree. Since petitioner's basis in those unbilled fees was zero, his contribution adds nothing to the basis of his partnership interest. Secs. 721 and 722. *Barnes* v. *United States*, 253 F. Supp. 116 (S.D. Ill. 1966), cited by petitioner, is clearly distinguishable, since there the taxpayer bought into an existing partnership, paying cash for the interest, which included a share of the unrealized receivables of the partnership. The District Court allowed the taxpayer to attribute an allocable portion of his cost basis to the unrealized receivables upon the subsequent sale of his partnership interest.

Petitioner also seeks to increase his basis by one-half of the liabilities of the partnership at the time of sale. He contends that example (1) of section 1.751–1(g) of respondent's regulations supports his contention. There is a basic fallacy in petitioner's reasoning. Unquestionably one-half of the partnership liabilities at the date of sale should be included in his basis. The fact of the matter is, however, that the amount of his share of those liabilities was less than the amount of his share of the partnership liabilities at inception which were included in the original basis of his partnership interest. See above. Having been included once, they should not be included again. Cf. *M. Pauline Casey*, 38 T.C. 357 (1962).

We conclude that petitioner had an adjusted basis of $11,258.61 in his partnership interest at the time of sale, the figure which respondent used.

*Decision will be entered under Rule 50.*