MELVIN A. SLAVIN AND SANDRA SLAVIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Slavin v. Commissioner
Docket No. 28207-85.
United States Tax Court
T.C. Memo 1989-221; 1989 Tax Ct. Memo LEXIS 221; 57 T.C.M. (CCH) 343; T.C.M. (RIA) 89221; May 9, 1989. Harry A. Rider, for the petitioners. Robert D. Kaiser, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioners' Federal income tax in the amount of $ 5,854 for the taxable year 1977 and $ 333,707 for the taxable year 1978. Respondent also determined an addition to tax under section 6653(a)[1] for the taxable year 1978 in the amount of $ 16,685. *223 After concessions, [2] the issues for decision involve only the taxable year 1978. The issues remaining are: 1) Whether Melvin A. Slavin's disposition of his 50-percent interest in three partnerships in exchange for assumption by the other 50-percent partner and his wife of the liabilities on certain bank loans constitutes a sale or exchange, as respondent contends, or a forgiveness of indebtedness by the bank, as Mr. Slavin contends; and 2) Whether Mr. Slavin is liable for an addition to tax under section 6653(a). *224 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and supplemental stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners, Melvin A. Slavin and Sandra Slavin, resided in Indianapolis, Indiana on the date the petition was filed. Petitioners timely filed their Federal income tax return for the taxable year 1978. Petitioner Sandra Slavin is a party in this case solely because she filed a joint tax return with her husband. All references to petitioner henceforth are to Melvin A. Slavin. In the 1960's and 1970's petitioner invested in many real estate and development ventures, both individually and in partnership with William A. Schmadeke. In the early 1970's American Fletcher National Bank, a bank with which petitioner and Mr. Schmadeke often dealt, asked the two men if they were interested in purchasing a piece of real estate that the bank had received in a voluntary foreclosure from one of its customers. Petitioner and Mr. Schmadeke were interested and the bank agreed to lend them the money to purchase and develop the property. Petitioner and Mr. Schmadeke obtained a loan *225 or loans from the bank. They then created several partnerships to purchase and develop the property, including Village Associates, Shadeland Associates, and Heather Hills Associates. From 1977 through August 31, 1978, petitioner held a 50 percent interest in each of the partnerships, Village Associates, Shadeland Associates, and Heather Hills Associates. As of August 31, 1978, petitioner shared the liabilities of these partnerships in the amounts set forth below on a 50-50 basis with Mr. Schmadeke: Total Partnership Partnership
Liabilities
Shadeland Associates
$ 5,152,292
Village Associates
1,072,368
Heather Hills Associates
987,574
In other words, petitioner's share of the liabilities was $ 3,606,117. Petitioner's adjusted bases in the partnerships as of August 31, 1978 are set forth below: Partnership
Adjusted Basis
Shadeland Associates
$ 1,455,993.52
Village Associates
427,352.00 Heather Hills Associates
315,910.82
Petitioner's capital accounts in the partnerships as of August 31, 1978 are set forth below: Partnership
Capital Account
Shadeland Associates
$ (1,120,152)
Village Associates
(  108,832) Heather Hills Associates
(  176,876)
*226 The record is not entirely clear as to whether the partnerships' loan obligations were recourse or nonrecourse. Apparently both recourse and nonrecourse liabilities were involved. [3]
After petitioner and Mr. Schmadeke purchased the property from American Fletcher National Bank, the partners began but ultimately were unable to complete their plans for the development of the properties. This was due to the fact that interest rates rose sharply during the late 1970's. At some point *227 American Fletcher National Bank began to lend petitioner and Mr. Schmadeke the money to make the interest payments on their bank loans. Later, the bank stopped making the loans for the interest due and began accruing the interest. Finally, the bank notified petitioner and Mr. Schmadeke that the bank was planning to call the loans. Petitioner and Mr. Schmadeke proceeded to meet with the bank numerous times to work out an agreement. During these meetings petitioner was represented by counsel. Mr. Schmadeke had assets and cash flow from other properties he owned and was financially able to continue to contribute funds to the partnerships. The record does not establish the extent of petitioner's other assets or financial resources at that time. [4] After many meetings, the bank suggested that it would not foreclose on the property if Mr. Schmadeke would put up his other property as additional collateral for the loan. Mr. Schmadeke was unwilling to do this unless petitioner could also put up additional collateral, particularly if he (Mr. Schmadeke) was to remain only a 50-percent partner in the three partnerships. The bank advised the two partners that the bank could foreclose on *228 the property [5] or petitioner could transfer his interests in the three partnerships to Mr. Schmadeke, who would then be the sole owner and solely liable on the loans. The bank was not eager to foreclose on this property again, wanting instead to have the loans further collateralized. *229 Petitioner testified that although he considered bankruptcy as an option (see nn.4, 5, supra), however, he thought he would not then be able to continue to earn a living by investing in properties as he had been doing for many years. In any event, petitioner agreed to transfer his 50-percent interest in the partnerships to Mr. Schmadeke and his wife, Diane V. Schmadeke. On August 31, 1978, in three separate "Assignment and Indemnification" agreements, petitioner agreed to "bargain, sell, assign, transfer and set over" two percent in each of the partnerships (Shadeland Associates, Village Associates, and Heather Hills Associates) to Mr. Schmadeke and 98 percent to Mrs. Schmadeke. In exchange for petitioner's interests in the partnerships, Mr. Schmadeke agreed to indemnify petitioner. Paragraphs 3 and 5 of each of those agreements provided as follows: 3. William [Mr. Schmadeke] does hereby indemnify Melvin [petitioner] and hold him harmless from those losses or claims or liabilities which may be imposed upon Melvin [petitioner] by reason of his having been a partner in the Partnership and which may arise out of those obligations of the Partnership of which the parties *230 have notice and knowledge at this date. * * * 5. It is the intent of the parties that this Assignment And Indemnification Agreement shall constitute an instrument of conveyance and transfer; however, the parties agree to execute any and all other documents which may be necessary to effectuate such transfer and assignment and which may be necessary to reflect the new ownership of the Partnership including but not limited to a Certificate Of Assumed Name. Petitioner did not receive any cash or other property in this transaction, but instead was released from all liabilities and obligations related to the partnerships, Village Associates, Shadeland Associates, and Heather Hills Associates. As a result of this transaction, petitioner's share of the profits and losses in the partnerships was reduced from 50 percent to 0 and his share of the partnerships' liabilities was reduced from $ 3,606,117 to 0. Petitioner was then excluded from any further discussions between Mr. Schmadeke and American Fletcher National Bank. After petitioner transferred his interests in the partnerships, neither the partnerships nor the bank ever looked to petitioner for any of the liabilities or obligations *231 of the partnerships. The record does not establish that American Fletcher National Bank ever forgave any of these loans owed to the bank. On his Federal income tax return for the taxable year 1978, petitioner did not include any reference to the transfer or disposition of his 50 percent interests in the three partnerships. On that return, however, he claimed a distributive loss from the partnership, Heather Hills Associates, for the entire year rather than for just the period up to August 31, 1978. He also failed to report a payment of $ 32,500 that he had received that year from another partnership, Marina Associates. The parties agree that petitioner maintained an excess of assets over liabilities, that is, a condition of technical solvency, for bankruptcy purposes, of $ 423,000 immediately after the transfer or disposition of petitioner's partnership interests on August 31, 1978. See nn.4, 5, supra.
On April 17, 1985, respondent mailed to petitioner a notice of deficiency. Respondent determined therein that petitioner realized and must recognize ordinary income in the amount of $ 312,011 and realized and must recognize long-term capital gains in the amount of $ 533,118 *232 on the disposition of the three partnerships. The ordinary income related to recapture of depreciation deductions taken by Shadeland Associates and Heather Hills Associates. The parties have stipulated that if the income from the transfer of the partnership interests and release from liabilities is taxable, petitioner is taxable on $ 1,093,849 as capital gains and $ 312,011 as ordinary income for the taxable year 1978. These amounts are broken down with regard to the various partnerships as follows: Capital gain
Bbefore sec. Partnership
Ordinary income
1202 deduction)
Total
Shadeland Associates
$ 289,542
$   830,610
$ 1,120,152
Village Associates
- 0 - 108,832
108,832 Heather Hills Associates
22,469
154,407
176,876
$ 312,011
$ 1,093,849
$ 1,405,860
OPINION Each party characterizes the substance of the transaction here quite differently. Petitioner claims that the agreements between Mr. Schmadeke and himself to transfer petitioner's 50 percent interests in three partnerships were assignments that were merely incidental to the cancellation of his indebtedness by American Fletcher National Bank. In addition to characterizing *233 the transaction as a cancellation or forgiveness of indebtedness, petitioner relies on the insolvency exception to the general rule that gross income includes income from discharge of indebtedness. Petitioner thus argues that he realized and must recognize income from the transfer only to the extent that he was solvent after the purported discharge of indebtedness. Respondent, on the other hand, characterizes the transaction as the sale or exchange of petitioner's partnership interests to the other partner with the result that petitioner should recognize this gain under section 741. Section 741 specifies that when an interest in a partnership is sold or exchanged, gain or loss is recognized by the transferor partner and is considered as gain or loss from the sale or exchange of a capital asset. Gain or loss from the sale or exchange of a partnership interest is measured by the difference between the amount realized and the adjusted basis of the partnership interest. Sec. 1.741-1(a), Income Tax Regs.
*234 Section 752(d) provides that when an interest in a partnership is sold or exchanged, the liabilities are treated in the same manner as liabilities in connection with the sale or exchange of property not associated with partnerships. In general, liabilities assumed by the purchaser are included in the amount realized upon the sale or exchange of property, partnership or otherwise, "as if the money had been paid it [the seller] and then paid over by it to its creditors." Commissioner v. Tufts,461 U.S. 300, 304, 312 (1983); Crane v. Commissioner,331 U.S. 1, 13 (1947); sec. 1.1001-2(a)(1), Income Tax Regs. The reason for this is that, prior to any sale or exchange, the amount of the liability is included in the partnerships' basis in the property and and in the individual partners' bases in their partnership interests. Estate of Delman v. Commissioner,73 T.C. 15, 30 (1979). The partnership may take depreciation deductions with respect to the property, which in turn lead to losses for income tax purposes, and thereby provide each partner a tax benefit to the extent of his distributive share determined *235 by his basis, which includes the liability. Estate of Delman v. Commissioner, supra.
On the other hand, when a debt is forgiven, gross income includes the income from the discharge of this indebtedness. Section 61(a)(12). The theory is that to the extent that a taxpayer has been released from indebtedness, he has realized income because the cancellation frees assets previously offset by the liability arising from such indebtedness. United States v. Kirby Lumber Co.,284 U.S. 1, 3 (1931); Gershkowitz v. Commissioner,88 T.C. 984, 1005 (1987), on appeal (2d Cir., Dec. 16, 1988); Cozzi v. Commissioner,88 T.C. 435, 445 (1987). When a partnership's liabilities are decreased due to the forgiveness of debt, this is treated as a distribution of money by the partnership to the partner under section 752(b) and results in the recognition of gain by the partner to the extent that such a distribution exceeds his adjusted basis in his partnership interest. Sec. 731(a)(1); Gershkowitz v. Commissioner, supra.Petitioner *236 has not suggested, and the record does not show, that the bank ever forgave or discharged any indebtedness of the partnerships. Petitioner claims that the bank forgave his indebtedness, but he relies on the insolvency exception to the general rule of income recognition. An exception to the rule that gross income includes income from the discharge of indebtedness arises when the taxpayer is insolvent both immediately before and immediately after the discharge of indebtedness. Gershkowitz v. Commissioner, supra,88 T.C. at 1005; Estate of Delman v. Commissioner, supra,73 T.C. at 32; Lakeland Grocery Co. v. Commissioner,36 B.T.A. 289, 291 (1937). It is immaterial whether or not the partnership is solvent since the determination of insolvency is made at the partner, not the partnership, level. Gershkowitz v. Commissioner, supra,88 T.C. at 1009. The theory of the insolvency exception is that no accession to income has occurred if, after the debt cancellation, the taxpayer remains insolvent, since no assets have been freed. *237 Estate of Delman v. Commissioner, supra.To the extent that the cancellation renders the taxpayer solvent, however, he is deemed to have realized income in the amount by which his assets exceed his liabilities immediately after the cancellation. Haden Co. v. Commissioner,118 F.2d 285, 286 (5th Cir. 1941), affg. a Memorandum Opinion of this Court; Estate of Delman v. Commissioner, supra;Cole v. Commissioner,42 B.T.A. 1110, 1112-1113 (1940); Lakeland Grocery Co. v. Commissioner, supra,36 B.T.A. at 292. Thus, here, we assume petitioner now concedes he realized and must recognize income at least to the extent of $ 423,000. Since the insolvency exception applies only when a debt is forgiven, in this case we must first determine whether petitioner sold his partnership interests or whether petitioner's debt was forgiven. The distinction between income arising from a sale or exchange of property and income arising from the discharge of indebtedness is not always clear. See Estate of Delman v. Commissioner, supra,73 T.C. at 31. In distinguishing between a sale or exchange and a discharge *238 of indebtedness, the courts have interpreted "sale or exchange" broadly and have interpreted "discharge of indebtedness" narrowly. For example, this Court has determined that the voluntary reconveyance of property to the mortgagee in lieu of foreclosure constitutes a "sale or exchange." Allan v. Commissioner,86 T.C. 655, 659 (1986), affd. 856 F.2d 1169 (8th Cir. 1988); Freeland v. Commissioner,74 T.C. 970, 975-976 (1980). This type of transfer to a mortgagee constitutes a sale or exchange both when the taxpayer is personally liable on the note and when the note is nonrecourse. Stamler v. Commissioner,145 F.2d 37, 39 (3d Cir. 1944); Freeland v. Commissioner, supra, 74 T.C. at 975-976, 980. In Estate of Delman v. Commissioner, supra,73 T.C. at 39, this Court refused to apply the insolvency exception since the gain realized by the taxpayer arose from the repossession of equipment, a sale or exchange for tax purposes, and not a discharge of indebtedness. In Stilwell v. Commissioner,46 T.C. 247 (1966), however, this Court found a termination and dissolution *239 of the partnership rather than a sale. The Court held that a sale did not take place, since the agreement between the partners did not contain "a single phrase which usually accompanies a sale, such as 'does hereby transfer, set over, bargain, sell, assign and convey.'" 46 T.C. at 250. The parties had agreed in that case that the taxpayer had a deductible loss, and the Court went on to find, on other grounds, that the loss was still a capital loss. A taxpayer has been forgiven or released from a debt when the facts reasonably establish that the debt will probably never be paid, that the taxpayer does not intend to repay the loan, and that the party who loaned the money does not intend to enforce its claim against the taxpayer. [6] The facts in this case do not establish any forgiveness of any of the loans owed to the bank. No agreement of any type existed between petitioner and American Fletcher National Bank to reflect that the Bank did not intend to enforce the loans against the partnerships and/or petitioner. To the contrary, after numerous meetings to discuss the overdue loans, American Fletcher National Bank notified petitioner that he would either have to increase *240 the collateral securing the loans or the bank would foreclose. Petitioner testified he considered but decided not to declare bankruptcy because of the effect he believed it would have on his opportunities to engage in future real estate transactions. In any event, he decided to transfer his interest to Mr. Schmadeke, who would provide additional collateral only if he obtained petitioner's interest in the partnerships. The agreement between petitioner and Mr. Schmadeke reflects a sale rather than a forgiveness of debt. First of all, Mr. Schmadeke was not the lender and so he was incapable of forgiving petitioner's debt to the bank. Second, the actual terms in the agreement indicated that petitioner's interest was being sold and Mr. Schmadeke was buying the interest. Petitioner signed three documents in which he agreed to "bargain, sell, assign, transfer and set over" his 50 percent interest in the three partnerships. And third, petitioner actually transferred all of the liabilities to Mr. Schmadeke. All of these debts were transferred to Mr. Schmadeke in exchange for petitioner's interests in the *241 partnerships. There is no indication in the record that the bank ever canceled or forgave any part of these loans. Even if we could find that this was a forgiveness of debt situation, petitioner would still realize income under section 61(a)(12) at least to the extent of $ 423,000. Although petitioner argues that he falls under the insolvency exception and so need not realize income, petitioner failed to prove that he was insolvent prior to or after the transfer. Under the insolvency exception, petitioner must be insolvent both immediately before and immediately after the discharge of indebtedness. Petitioner offered no proof that he was insolvent prior to the transfer. See nn.4, 5, supra. Petitioner offered no proof to show that he actually had no assets, liquid or otherwise, to make the loan payments and so was insolvent. In fact the record of this case is singularly devoid of evidence to support petitioner's theory of the case, i.e., facts to support the insolvency exception. See nn.4, 5, supra. Thus, petitioner has not established that he comes within the insolvency exception, and he must include in income any gain from the release of his share of the partnerships' *242 liabilities. Respondent also determined an addition to tax under section 6653(a). Section 6653(a) provides "If any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment." Petitioner bears the burden of proving that no part of the underpayment herein is due to negligence or intentional disregard of rules and regulations. Barton v. Commissioner,424 F.2d 1295 (7th Cir. 1970), cert. denied 400 U.S. 949 (1970). Petitioner has not carried his burden. Petitioner made no effort to report or note the transfer of his partnership interests on his Federal income tax return for the taxable year 1978. Moreover, petitioner actually claimed a full distributive loss from Heather Hills Associates for the entire year although he had disposed of his interest in that partnership in August. Also, petitioner failed to report a payment of $ 32,500 from another partnership in which he had an interest. Even under petitioner's *243 theory of the case, reliance on the insolvency exception, he should have reported some income. He was solvent at least to the extent of $ 423,000 after the transfer and should have reported this income on his return for the taxable year 1978. [7]
To reflect the concessions and the above holdings, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners and respondent agree that petitioners' correct distributable share of loss from Marina Associates, Ltd. was $ 48,091 for the taxable year 1977 and $ 34,417 for the taxable year 1978. These figures resulted in a decrease in income in the amount of $ 391 for the 1977 taxable year and an increase in income in the amount of $ 7,268 for the 1978 taxable year. Petitioners conceded respondent's adjustment for gains realized and recognized during 1977 on the transfer of the assets and liabilities of Castleton Associates to Castle Cove Development Company. With the exception of what is at issue in this case, petitioners did not challenge the other adjustments in the deficiency notice and they are deemed to be conceded. Rule 34(b)(4).↩
3. Petitioner's counsel, in his opening statement, represented that the loan for the apartment project of Shadeland Associates was nonrecourse, that the loan for the shopping center and office building of Heather Hills Associates was also nonrecourse, but that the loan for Village Associates was recourse. Unfortunately there is no evidence in the record on this point. In fact the record is singularly devoid of information as to exactly what development had occurred, whether the loans were initial financing, construction financing, or permanent financing, or some combination of these. There is no evidence in the record as to the fair market value of any of this land or of the improvements thereon.↩
4. While petitioner testified in vague, general terms that he had no other resources or sources of income available to him at that time, the Court is not persuaded by his testimony. The record shows that he had interests in other partnerships, Subchapter S corporations, and Schedule C entities. More importantly, however, petitioner's whole theory in this case is the insolvency exception to the forgiveness-of-debt income. That depends upon his establishing that he was insolvent before and after the August 31, 1978 transaction in regard to the three partnerships involved in this case. There was no probative evidence on that issue at the trial. At trial petitioner attempted to read into the record a compilation he had prepared about his financial condition. The Court had already refused to admit that document into evidence, because respondent had never been given an opportunity to examine the underlying books and records from which the compilation was made or to verify the data in any way. The Court, of course, refused to let petitioner read the excluded document into the record. However, the Court held the record open to permit the parties to verify the excluded document, to submit a further stipulation, or to prepare for a further trial session on this critical issue of petitioner's financial condition. After several months the case was calendared for a further trial session, but the parties instead decided to supplement the record with a second stipulation of facts, and that was done. That supplemental stipulation provided no information as to petitioner's financial status in 1978 except as follows: 3. Following mutual compromise, and in an attempt to resolve the financial status issue without the necessity of extensive stipulations, multiple witnesses and lengthy testimony, the parties have come to an agreement regarding the financial condition of the petitioners during the year in issue. The parties have arrived at this mutual compromise after various considerations including available resources. This stipulation of the financial condition of the petitioners is for the purposes of this case only and the parties explicitly do not stipulate to individual asset and liability values or the completeness of a total listing of assets or liabilities. 4. The parties agree that the petitioners experienced or maintained an excess of assets over liabilities, that is, a condition of technical solvency, for bankruptcy purposes of $ 423,000.00 immediately after the transfer or disposition of the petitioners' partnership interests on August 31, 1978 to William and Diane Schmadeke. Thus, there is still no probative evidence in the record as to petitioner's financial condition. After the transfer or disposition of the partnership interests on August 31, 1978, he was solvent to the extent of $ 423,000. ↩
5. While petitioner testified the bank told him that he had the option of bankruptcy or transferring his interests to Mr. Schmadeke, the Court did not believe that testimony. If the loans were nonrecourse, and some of them apparently were, the only thing the bank could do would be to foreclose on the property. Neither Mr. Schmadeke nor any representative of American Fletcher National Bank appeared or testified at the trial. Without further information as to petitioner's financial condition (see n.4, supra↩), this Court is unwilling to find as a fact that his only other option was bankruptcy.
6. B. M. Marcus Estate v. Commissioner,T.C. Memo. 1975-9↩.
7. On brief petitioner rather casually dismisses this fact of solvency as follows: "Petitioner did stipulate that some solvency was achieved in the transaction which was a compromise to resolve a major issue." That "major issue" was petitioner's total failure of proof as to his financial condition in 1978, a failure that remained largely uncured even after the Court continued the trial to permit the parties to stipulate or to prepare for a further trial session. See nn.4, 5, supra.↩ If anything, however, this stipulated fact shows that petitioner was negligent, even under his theory of the case.