FRANCIS E. HOLMAN AND ELOISE F. HOLMAN, HIS WIFE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

WILLIAM M. HOLMAN AND EMILY L. HOLMAN, HIS WIFE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1145-73, 1159-73.    Filed July 29, 1976.

*William M. Holman,* for the petitioners.
*Richard J. Shipley,* for the respondent.

OPINION

FEATHERSTON, *Judge:* In these consolidated proceedings, respondent determined the following deficiencies in petitioners' Federal income taxes:

| Docket No. 1145-73 | | Docket No. 1159-73 | |
|---|---|---|---|
| *Year* | *Amount* | *Year* | *Amount* |
| 1969 | $1,241.46 | 1969 | $2,775.00 |
| 1970 | 1,439.00 | 1970 | 1,784.00 |

Other items having been settled by the parties, only two issues remain for decision:

(1) Whether payments received by petitioners upon their expulsion from a law partnership are taxable as ordinary income pursuant to sections 736[1] and 751 or as capital gains pursuant to section 731.

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.

(2) Whether petitioners incurred a deductible capital loss resulting from the forfeiture of 10 percent of their interest in the partnership's accounts receivable and unbilled services.

All the facts are stipulated.

All four petitioners in these proceedings, Francis E. Holman and Eloise F. Holman, husband and wife, and William M. Holman and Emily L. Holman, husband and wife, were legal residents of the State of Washington on the date their respective petitions were filed. Both couples filed their joint Federal income tax returns for 1969 and 1970 with the Director, Internal Revenue Service Center, Ogden, Utah.

Petitioners Francis E. Holman and William M. Holman (hereinafter Francis and William or petitioners) were lawyers and partners in a law firm in Seattle, Wash., known as Holman, Marion, Perkins, Coie & Stone (hereinafter the law firm). Francis joined the law firm as an associate in 1941 and became a partner in 1954 and a member of the firm's executive committee in 1962. William joined the firm as an associate in 1949 and became a partner in 1957 and a member of the firm's executive committee in 1967.

As of May 13, 1969, the law firm consisted of 22 partners, including Francis and William, and approximately the same number of employed associate attorneys. The firm operated pursuant to a written partnership agreement dated January 1, 1968, and supplementary rules adopted thereunder, and its business affairs were governed by an executive committee composed of the 10 most senior partners, including Francis and William.[2]

On May 13, 1969, a special meeting of the executive committee of the partnership, including petitioners, was called by the managing partner, DeForest Perkins. Without prior notice to petitioners, the executive committee, by a majority vote, adopted a resolution expelling Francis and William from the partnership effective immediately.

Paragraph 10 of the partnership agreement specifies the rights of a partner upon expulsion. In pertinent part it states:

10. *Event of Explusion of Partner.* If a partner is expelled from the Firm, he shall, upon expulsion, cease to have any right, title or interest in and to the Firm's assets, including, but not limited to, its Capital Accounts and the

---

[2] In 1955, the State of Washington adopted the Uniform Partnership Act, Wash. Rev. Code sec. 25.04 (1974), and it has been applicable and in effect since that time.

properties reflected therein and the Inventory; provided, however, that he shall retain and be paid his interest in the Undistributed Income as of the Date of Expulsion. The books and records of the Firm shall be closed as of the Date of Expulsion. Based thereon the Firm shall pay to the expelled partner for his interest in the Capital Accounts and properties reflected therein, an amount equal to his participation percentage at the Date of Expulsion applied to the value of such Capital Accounts. Payment of said amount shall be made to him within six months after the Date of Expulsion. For his interest in the Inventory as of the Date of Expulsion, the Firm shall pay to him an amount equal to his participation percentage at the Date of Expulsion multiplied by 90% of the Inventory Value, said amount to be paid in approximately equal monthly installments over such period, not to exceed eighteen months following the Date of Expulsion, as determined by the Executive Committee.

The terms "inventory" and "inventory value" are defined by the partnership agreement as follows:

6.4 *Inventory* shall mean, as of any particular date, the accounts receivable of the Firm for services rendered (but not accounts receivable for reimbursable items) and the recorded billable hours of services performed by the Firm for its clients for which no bill has been rendered to the client, all as of the close of business on such date, but excluding therefrom such of said unbilled billable hours as may be written off by the Firm as of such date as time for which no bill probably will be submitted to the client or which, if billed, would in the judgment of the Executive Committee, probably not be paid.

6.5 *Inventory Value* shall mean, as of any particular date, (a) the amount of the accounts receivable for services rendered (but not accounts receivable for reimbursable items), as of the close of business on such date, minus so much thereof as shall be written off by the Firm as of such time, plus (b) the unbilled billable hours included in the Inventory multiplied by the established office rates for the respective lawyers whose time is included in the Inventory, that were in effect at the time the work reflected in the Inventory was performed.

As of the date of expulsion, Francis' percentage interest in the partnership capital account was 5.06 percent and in the other partnership assets was 4.90 percent and William's percentage interest in the partnership capital account was 5.59 percent and in the other partnership assets was 5.45 percent, resulting in the following amounts (prior to reduction by the 10 percent as required by the partnership agreement for items (C) and (D):

|  | Francis | William |
|---|---|---|
| (A) Undistributed income | $2,814.55 | $3,039.20 |
| (B) Capital accounts | 3,457.33 | 3,819.46 |
| (C) Accounts receivable | 10,817.83 | 12,031.97 |
| (D) Unbilled services | 14,621.20 | 16,262.35 |

Shortly after the date of their expulsion, Francis and William were paid their percentage interests in items (A) and (B), the

undistributed income and the capital accounts of the firm. Such payments and the tax aspects thereof are not here in dispute. In addition, petitioners received the following amounts over an 18-month period in monthly installments in consideration of items (C) and (D) (accounts receivable and unbilled services):

| Year | Francis | William |
|------|---------|---------|
| 1969 | $8,903.58 | $9,903 |
| 1970 | 13,991.45 | 15,562 |
| Total | 22,895.03 | 25,465 |

The foregoing payments were reported by petitioners on their income tax returns as capital gain and respondent determined that these amounts were ordinary income.

Although the payments made to petitioners by the partnership were originally tendered as payments due pursuant to and in discharge of the partnership obligations under paragraph 10 of the partnership agreement, petitioners declined to accept the payments on that basis. Petitioners took the position that the partnership agreement had been breached, brought an action in the Superior Court in the State of Washington for damages resulting therefrom, and accepted the payments only when tendered without any conditions or qualifications. The Superior Court dismissed petitioners' lawsuit in 1972, and the Court of Appeals for the State of Washington affirmed the dismissal.[3] The parties have stipulated that: "Determination of petitioners' income tax liabilities for 1969 and 1970 is * * * to be made on the basis [that] the payments received from the partnership were made pursuant to the partnership agreement."

### Issue 1. Capital Gain Versus Ordinary Income Treatment of Expulsion Payments

Petitioners contend that their expulsion from the partnership constituted "in effect a forfeiture, condemnation or taking of their partnership interests, or, as it were, a forced exchange of one set of property rights for another." Ordinarily, the argument goes, a sale or exchange of a capital asset produces capital gain, and section 731(a)[4] provides that, in the case of a distribution to a

---

[3] *Holman v. Coie,* 11 Wash. App. 195, 522 P.2d 515 (1974).

[4] SEC. 731. EXTENT OF RECOGNITION OF GAIN OR LOSS ON DISTRIBUTION.

(a) PARTNERS.—In the case of a distribution by a partnership to a partner—

(1) gain shall not be recognized to such partner, except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership

partner, such as the expulsion payments to petitioners, gain shall not be recognized except to the extent the distributed amount exceeds the adjusted basis of the partner's interest. Implicitly conceding that the disputed payments exceeded the adjusted basis of their partnership interests, petitioners rely upon the further provision that any gain recognized under section 731(a) shall be considered as gain from the sale or exchange of the interest. On this theory they contend the disputed payments were capital gain. We disagree.

One obvious error in petitioners' position lies in their failure to apply subsection (c) along with subsection (a) of section 731. Subsection (c) provides that section 731 shall not apply to the extent otherwise provided by section 736, relating to payments to a retiring partner, and section 751, relating to unrealized receivables.

Section 736(a)[5] specifies that, except as provided in section 736(b), a payment made in liquidation of the interest of a retiring partner shall be considered as a "guaranteed payment," described in section 707(c),[6] if the amount thereof is determined

immediately before the distribution, * * *
   * * *
Any gain * * * recognized under this subsection shall be considered as gain * * * from the sale or exchange of the partnership interest of the distributee partner.
   * * *
   (c) EXCEPTIONS.—This section shall not apply to the extent otherwise provided by section 736 (relating to payments to a retiring partner or a deceased partner's successor in interest) and section 751 (relating to unrealized receivables and inventory items).
   [5] SEC. 736. PAYMENTS TO A RETIRING PARTNER OR A DECEASED PARTNER'S SUCCESSOR IN INTEREST.
   (a) PAYMENTS CONSIDERED AS DISTRIBUTIVE SHARE OR GUARANTEED PAYMENT.—Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered—
   * * *
   (2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership.
   (b) PAYMENTS FOR INTEREST IN PARTNERSHIP.—
   (1) GENERAL RULE.—Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, to the extent such payments (other than payments described in paragraph (2)) are determined, under regulations prescribed by the Secretary or his delegate, to be made in exchange for the interest of such partner in partnership property, be considered as a distribution by the partnership and not as a distributive share or guaranteed payment under subsection (a).
   (2) SPECIAL RULES.—For purposes of this subsection, payments in exchange for an interest in partnership property shall not include amounts paid for—
   (A) unrealized receivables of the partnership (as defined in section 751(c)), * * *
   [6] SEC. 707. TRANSACTIONS BETWEEN PARTNER AND PARTNERSHIP.
   (c) GUARANTEED PAYMENTS.—To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be

without regard to the income of the partnership. The term "liquidation of a partner's interest" is defined by section 761(d) to mean the termination of a partner's entire interest in a partnership by means of a distribution or series of distributions. The payments made to petitioners over the 18 months following their expulsion terminated their interests in the partnership, and the amounts thereof were determined with reference to the amount billable for the services rendered to the date of the expulsion rather than the subsequent income of the partnership. Unless something in section 736(b) rescues them, the payments to petitioners thus fall squarely within the guaranteed payment provisions of section 736(a)(2) and are taxable as ordinary income. Sec. 1.707-1(c), Income Tax Regs.

Nothing in subsection (b) of section 736 aids petitioners' cause. Paragraph (1) of the subsection prescribes a general rule that payments made in liquidation of the interest of a "retiring" partner, to the extent determined to be made in exchange for the interest of such partner in partnership property, shall be considered as a distribution by a partnership and not as a guaranteed payment under section 736(a). But paragraph (2) of the subsection provides that the general rule does not apply to payments in exchange for an interest in property consisting of "unrealized receivables" as defined in section 751(c).[7] Clearly the accounts receivable and charges for unbilled services for which petitioners received the disputed payments were unrealized receivables as so defined, and the section 736(b) exception does not apply.

Petitioners' response is that they were not "retiring" but were expelled partners and, therefore, section 736 does not apply. Section 736 is broad enough to cover the termination of petitioners' interests in their partnership through expulsion. Indeed, section 1.736-1(a)(1)(ii),[8] Income Tax Regs., provides

---

considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and section 162(a) (relating to trade or business expenses).

[7] SEC. 751. UNREALIZED RECEIVABLES AND INVENTORY ITEMS.

(c) UNREALIZED RECEIVABLES.—For purposes of this subchapter, the term "unrealized receivables" includes, to the extent not previously includible in income under the method of accounting used by the partnership, any rights (contractual or otherwise) to payment for—

    * * *

(2) services rendered, or to be rendered.

[8] Petitioner challenges the validity of this regulation. However, as discussed in the text,

that:

A partner retires when he ceases to be a partner under local law. However, for the purposes of subchapter K, chapter 1 of the Code, a retired partner or a deceased partner's successor will be treated as a partner until his interest in the partnership has been completely liquidated.

This provision covers both voluntary withdrawals and expulsions as long as the individual ceases to be a partner under local law. Cf. *V. Zay Smith,* 37 T.C. 1033 (1962), affd. 313 F.2d 16 (10th Cir. 1962). And as noted above, the Washington Court of Appeals specifically upheld, under the applicable State law, petititioners' expulsion from the partnership. Yet until petitioners' interest had been liquidated by means of the disputed payments, petitioners continued to be partners for income tax purposes, and the amounts which they received for their interests in the law firm's receivables and unbilled services were compensation for services rendered or to be rendered.

The other exception in section 731(c)—"section 751 (relating to unrealized receivables * * * )"—is equally detrimental to petitioners' position. Section 751(a)[9] provides that the amount of any money received by a partner for all or part of his interest in the partnership attributable to "unrealized receivables of the partnership" shall be considered as amounts realized from the sale or exchange of property other than a capital asset, i.e., taxed as ordinary income. In *Roth v. Commissioner,* 321 F.2d 607, 611 (9th Cir. 1963), affg. 38 T.C. 171 (1962), the court stated that section 751 was designed "to exclude from capital gains treatment any receipts which would have been treated as ordinary income to the partner if no transfer of the partnership interest had occurred." Petitioners' shares of the partnership's

---

*infra,* the provisions of secs. 731(c), 736(b)(2)(A), and particularly 751, all dealing with unrealized receivables, were designed to prevent the conversion of ordinary income into capital gain through transfers or terminations of partners' interests in unrealized receivables. Taking this statutory objective into account, we do not think the regulation reflects an unreasonable exercise of rule-making authority. *United States v. Correll,* 389 U.S. 299, 307 (1967); *Commissioner v. South Texas Co.,* 333 U.S. 496 (1948).

[9] Sec. 751(a) provides as follows:

(a) SALE OR EXCHANGE OF INTEREST IN PARTNERSHIP.—The amount of any money, or the fair market value of any property, received by a transferor partner in exchange for all or a part of his interest in the partnership attributable to—

(1) unrealized receivables of the partnership, or

(2) inventory items of the partnership which have appreciated substantially in value, shall be considered as an amount realized from the sale or exchange of property other than a capital asset.

accounts receivable and charges for unbilled services would have been treated as ordinary income if collected while petitioners remained members of the partnership and thus fall within the rule of section 751(a).

This Court's language in *Frank A. Logan,* 51 T.C. 482, 485-486 (1968), where the taxpayer received cash of $10,000 for his share of unbilled work in progress on the sale of his interest in a two-man law partnership, is apposite:

> Section 751 was enacted "to prevent the conversion of potential ordinary income into capital gain by virtue of transfers of partnership interests." H. Rept. No. 1337, 83d Cong., 2d Sess., p. 70 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess., p. 98 (1954). * * * If petitioner had remained in the partnership, he would eventually have shared in the payments for services performed by the partnership before July 1, 1960. His share would have been ordinary income to him. The $10,000 Dawson paid him for his interest in the work in progress on July 1, 1960, was thus a substitute for ordinary income. * * * The fruit petitioner left on the partnership tree may not have been ripe, but it was nonetheless fruit.

We see no support in the law for petitioners' position that the disputed payments are taxable as capital gains.

### Issue 2. Capital Loss for Difference Between Face Amount of Receivables and Expulsion Payments

In amended petitions, petitioners have alleged that they suffered capital losses on the termination of their partnership interests, measured by the difference between the amount of the accounts receivable and charges for unbilled services and the 90 percent of face value of such receivables plus interest on the deferred installments which they received after their expulsion from the partnership. In making this allegation they treat as their basis in the receivables and charges for unbilled services the full amount thereof computed in accordance with paragraphs 10, 6.4, and 6.5, quoted above, from the partnership agreement.[10] There is no merit in petitioners' position.

Petitioners have not shown they had any basis in the accounts receivable or charges for unbilled services. Had the amounts of these items been reflected in the taxable income of the partnership and in petitioners' distributive share thereof for the

---

[10] If petitioners, in fact, had a basis equal to the face amount of the accounts receivable and charges for unbilled services, they had no gain, capital or otherwise, from the disputed payments, and their entire Issue 1 argument that their expulsion payments were taxable as capital gain rather than ordinary income was empty rhetoric.

current or prior taxable years, they might have acquired a basis therein under section 705(a)(1)(A).[11] But petitioners did not attempt to show and do not argue that they ever included any amount of these items in their taxable income. In essence, petitioners seek a deduction for their failure to realize anticipated income, and no such deduction is allowable. *Hort v. Commissioner,* 313 U.S. 28 (1941); *Marks v. Commissioner,* 390 F.2d 598, 599 (9th Cir. 1968), affg. a Memorandum Opinion of this Court, cert. denied 393 U.S. 883 (1968). The most reasonable conclusion on this record is that the difference between the face amount of the receivables and charges for unbilled services and the 90 percent thereof payable under the partnership agreement reflected estimated costs of collection and an adjustment for uncollectible amounts.

To reflect the foregoing,

*Decisions will be entered for the respondent.*

---

[11] SEC. 705. DETERMINATION OF BASIS OF PARTNER'S INTEREST.

(a) GENERAL RULE.—The adjusted basis of a partner's interest in a partnership shall, except as provided in subsection (b), be the basis of such interest determined under section 722 (relating to contributions to a partnership) or section 742 (relating to transfers of partnership interests)—

(1) increased by the sum of his distributive share for the taxable year and prior taxable years of—

(A) taxable income of the partnership as determined under section 703(a),