ELWOOD R. AND JOYCE A. MILLIKEN, PETITIONERS v.
COMMISSIONER .OF INTERNAL REVENUE, RESPONDENT

Docket No. 806–77.     Filed April 25, 1979.

Elwood R. Milliken, pro se.
*W. Terrence Mooney*, for the respondent.

STERRETT, *Judge:* Respondent, on November 23, 1976, issued a statutory notice in which he determined a deficiency in petitioners' Federal income tax for their taxable year 1974 in the amount of $874.88.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioners Elwood R. and Joyce A. Milliken, husband and wife, resided in Sebago Lake, Maine, at the time the petition herein was filed. Petitioners are cash basis, calendar year taxpayers. They filed their Federal income tax return for the 1974 taxable year with the Andover Service Center, Andover, Mass. Joyce A. Milliken is a party to this action only because she joined in the filing of this return and, accordingly, Elwood R. Milliken will hereinafter be referred to as petitioner.

In 1970, petitioner became a partner in an accounting firm known as MacDonald, Page, Stratford & Strout (hereinafter the partnership). In July of 1974, petitioner was informed orally that a vote had been taken to expel him from the partnership because he had lost an audit, which reason he denies, and because he had opposed an attempt to expel another of its partners. Petitioner considers his separation from the partnership illegal.

With respect to expulsion of a partner the partnership agreement provided as follows:

## ARTICLE XI

\*       \*       \*       \*       \*       \*       \*

11.2 Any partner may be expelled at any time upon a unanimous vote of all of the partners except the partner to be expelled.

11.3 Upon the death, withdrawal, retirement or expulsion of a partner, a proper accounting shall be made of the capital and income accounts of each partner on an accrual basis at the date of dissolution.

11.4 Any partner who withdraws, retires or is expelled shall be paid his capital account and income account determined on an accrual basis up to the date when he ceases to become a partner. This amount shall be paid in ten equal semi-annual installments with interest at 6%, with the first such payment to be made within four months from the date of withdrawal, retirement or expulsion. Amounts paid under this section shall be net of amounts which may be due in 13.2. \* \* \*

## ARTICLE XIII

13.1 Any partner who voluntarily retires from the partnership or is expelled from the partnership shall be entitled to receive his capital account and his income account accrued to the date of his ceasing to be a partner which sums shall be paid to the withdrawing or expelled partner in ten equal semi-annual installments over a period of five (5) years with interest at 6% per annum.

13.2 Any partner who voluntarily withdraws or is expelled from the partnership hereby agrees that should he perform any professional services directly or indirectly for any client or former client of the firm and receive fees therefor either directly or indirectly he will pay over to the partnership annually one-third of such fees received for service performed over a period of four (4) years from the date of his withdrawal from the firm.

On November 30, 1974, petitioner received a payment of $2,366.57 from the partnership under cover of a letter which explained:

Dear Woodie,

We are enclosing our checks on your capital account with interest due to November 30, 1976. Our check is supposed to be net of amounts which are due under Section 13.2 of our Partnership Agreement which calls for your payment of one third of fees from former clients for services performed over a period of four (4) years from the date of leaving the firm.

In accordance with your agreement with us, we shall expect to receive your check for that part of the fees due us on amounts received from former MacDonald, Page & Co. clients you have serviced.

\*       \*       \*       \*       \*       \*       \*

The partnership listed petitioner's salary, interest, and ordinary income as $28,270.34 on its Federal income tax return (Form 1065) for its calendar year 1974. That figure includes the

total amount of the November 30 payment. Its reconciliation of petitioner's capital account was calculated as follows:

| | | |
|---|---|---|
| Capital account at beginning of year | | $14,493.67 |
| Capital contributed during year | | (3,500.00) |
| Ordinary income | $27,099.69 | |
| Additional income | 1,170.65 | 28,270.34 |
| Withdrawals and distributions | | (27,331.49) |
| Capital account at end of year | | 11,932.52 |

Petitioner's individual return reported ordinary income of $25,903.77 for the calendar year 1974. He treated the November 30 payment as a capital withdrawal subsequent to retirement. Under his accounting, the reconciliation of his account is as follows:

| | | |
|---|---|---|
| Capital account at beginning of year | | $14,493.67 |
| Capital contributed during year | | (3,500.00) |
| Ordinary income | [1] $24,733.12 | |
| Additional income | 1,170.65 | 25,903.77 |
| Withdrawals and distributions | | (27,331.49) |
| Capital account at end of year | | 9,565.95 |

Prior to the November 30 payment, petitioner's capital account totaled $11,932.52.

Immediately after petitioner's receipt of the partnership return, he notified the partnership of his objection to its reporting of the November 30 payment as ordinary income. On February 25, 1975, after the partners failed to respond to his objection, petitioner complained to the Intelligence Division of the Internal Revenue Service alleging that his former partners were about to file a fraudulent partnership tax return for the 1974 taxable year.

On his notice of deficiency, respondent treated the total amount of the November 30 payment as ordinary income. He now concedes that only a portion of the $2,366.57 is taxable to petitioner, and in his opening statement named that amount to be $1,173.34.

---

[1] The difference between this figure and the $27,099.69 shown on the partnership return is a decrease of $2,366.57.

Petitioner also stated on his return that he was entitled to the benefit of a portion of the investment credit claimed by the partnership for the items purchased during the period January 1 through July 31, 1974. However, he did not place a figure on the credit or work the credit into his calculations on his tax return. On April 18, 1978, petitioner filed a refund claim for his 1974 taxable year.

## OPINION

Section 731(a)(1), I.R.C. 1954, provides that distributions from a partnership to a partner will not cause him to recognize a gain unless such distribution is in excess of his adjusted basis in the partnership interest.[2] However, section 731(c) excepts from nonrecognition amounts recognized under sections 736 and 751.[3]

Section 736 provided during the years in issue:

SEC. 736. PAYMENTS TO A RETIRING PARTNER OR A DECEASED PARTNER'S SUCCESSOR IN INTEREST.

(a) PAYMENTS CONSIDERED AS DISTRIBUTIVE SHARE OR GUARANTEED PAYMENT.—Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered—

(1) as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, or

(2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership.

(b) PAYMENTS FOR INTEREST IN PARTNERSHIP.—

(1) GENERAL RULE.—Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, to the extent such payments (other than payments described in paragraph (2)) are determined, under regulations prescribed by the Secretary or his delegate, to be made in exchange for the interest of such partner in partnership property, be considered a distribution by the partnership and not as a distributive share or guaranteed payment under section (a).

(2) SPECIAL RULES.—For purposes of this subsection, payments in exchange for an interest in partnership property shall not include amounts paid for—

---

[2]SEC. 731(a). PARTNERS.—In the case of a distribution by a partnership to a partner—

(1) gain shall not be recognized to such partner, except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution * * *

[3]SEC. 731(c). EXCEPTIONS.—This section shall not apply to the extent otherwise provided by section 736 (relating to payments to a retiring partner or a deceased partner's successor in interest) and section 751 (relating to unrealized receivables and inventory items).

(A) unrealized receivables of the partnership (as defined in section 751(c)), or

(B) good will of the partnership, except to the extent that the partnership agreement provides for a payment with respect to good will.

## Section 707(c) provides:

(c) GUARANTEED PAYMENTS.—To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and section 162(a) (relating to trade or business expenses).

Respondent contends that a portion of the November 30 payment should be recognized as ordinary income to petitioner. Petitioner, for a variety of reasons, objects to this characterization.

Petitioner argues that section 736 is not relevant to the characterization of the November 30 payment because his separation from the partnership was illegal and, therefore, he should not be considered a section 736 "retiring partner." We do not agree.

The term "retiring partner" has been interpreted as covering any withdrawal of the partner, voluntary or involuntary, that is effective under local law. *Holman v. Commissioner*, 66 T.C. 809, affd. 564 F.2d 283 (9th Cir. 1977). Herein the partnership, by vote, expelled petitioner. Under Maine law, petitioner's relief for wrongful severance is not a forced continuance of the partnership but an accounting. Me. Rev. Stat. tit. 31, sec. 318 (1973).[4] Because the severance was effective under local law, for our purposes it is irrelevant whether it was legal or illegal.

In working through section 736, we must first determine

---

[4]Sec. 318. Rights of partners to application of partnership property

When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them in respect of their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners. But if dissolution is caused by expulsion of a partner, bona fide under the partnership agreement and if the expelled partner is discharged from all partnership liabilities, either by payment or agreement under the second part of section 316, he shall receive in cash only the net amount due him from the partnership.

When dissolution is caused in contravention of the partnership agreement the rights of the partners shall be as follows.

1. Wrongful dissolution. Each partner who has not caused dissolution wrongfully shall have:

A. All the rights specified in the first paragraph of this section; and

B. The right, as against each partner who has caused the dissolution wrongfully, to damages for breach of the agreement.

whether any part of the November 30 payment was "in exchange for the interest of such partner in partnership property" within section 736(b). Section 736(b)(2) excludes therefrom amounts received with respect to section 751(c) unrealized receivables. Although the partners have severely limited our ability to characterize or apportion the payment due to their failure to divulge the adjusted basis and fair market value of the partnership's unrealized receivables, capital assets, section 1231 assets and liabilities, and the apportionment of such amounts to petitioner, they have stipulated that petitioner's cash interest in the partnership property was $11,932.52 immediately prior to his separation. Such amount is a section 736(b) interest. in partnership property and, under paragraph VI thereof, will be considered a section 731(a) distribution by the partnership.

Once the section 736(b) amount is determined, the remainder of the amount to be paid to a retiring partner is characterized by section 736(a). That subsection separates the remainder into the amount determined with regard to partnership income (a section 736(a)(1) amount) and the amount determined without regard to partnership income (a section 736(a)(2) amount). Herein the partnership agreement provides that the total amount due a retiring partner will be determined by an accrual basis accounting of his interest in the partnership as of the date of separation. Clearly this is a section 736(a)(2) amount. Therefore, under section 736(a)(2) the remainder amount will be treated as a section 707(c) guaranteed payment resulting in ordinary income to petitioner.

When a given payment is made to a retiring partner, section 736(b) refers the taxpayer to the Income Tax Regulations for apportionment of the payment between the section 736(a) and (b) amounts. In absence of an apportionment agreement between the partnership and the retiring partner, section 1.736–1(b)(5), Income Tax Regs., provides:

(5) Where payments made under section 736 are received during the taxable year, the recipient must segregate that portion of each such payment which is determined to be in exchange for the partner's interest in partnership property and treated as a distribution under section 736(b) from that portion treated as a distributive share or guaranteed payment under section 736(a). Such allocation shall be made as follows—

(i) If a fixed amount (whether or not supplemented by any additional amounts) is to be received over a fixed number of years, the portion of each payment to be treated as a distribution under section 736(b) for the taxable

year shall bear the same ratio to the total fixed agreed payments for such year (as distinguished from the amount actually received) as the total fixed agreed payments under section 736(b) bear to the total fixed agreed payments under sections 736(a) and (b). The balance, if any, of such amount received in the same taxable year shall be treated as a distributive share or a guaranteed payment under section 736(a)(1) or (2). However, if the total amount received in any one year is less than the amount considered as a distribution under section 736(b) for that year, then any unapplied portion shall be added to the portion of the payments for the following year or years which are to be treated as a distribution under section 736(b). For example, retiring partner W who is entitled to an annual payment of $6,000 for 10 years for his interest in partnership property, receives only $3,500 in 1955. In 1956, he receives $10,000. Of this amount, $8,500 ($6,000 plus $2,500 from 1955) is treated as a distribution under section 736 (b) for 1956; $1,500 as a payment under section 736(a).

(ii) If the retiring partner or deceased partner's successor in interest receives payments which are not fixed in amount, such payments shall first be treated as payments in exchange for his interest in partnership property under section 736(b) to the extent of the value of that interest and, thereafter, as payments under section 736(a).

Herein the partnership agreement provided that the retiring partner's interest, as determined by the above-referenced accounting, shall be paid to that partner in 10 equal semiannual payments plus interest at 6 percent. The parties have stipulated that petitioner's accrual basis partnership account totaled $23,665.65 immediately prior to his separation. We have previously found that $11,932.52 of his total interest is his section 736(b) amount. Thus, the ratio derived from application of section 1.736–1(b)(5)(i), Income Tax Regs., is 11,932.52÷23,665.65 or .5042. The section 736(b) amount for each payment is determined by multiplying the amount of the payment by that ratio. The remainder of the payment is then characterized by section 736(a).

Petitioner objects to our application of section 1.736–1(b)(5)(i), Income Tax Regs. He contends that the netting effect of article XI section 11.4 causes uncertainty with respect to the amount to be paid by the partnership. He argues further that, due to such uncertainty, the payment cannot be categorized as fixed in amount so that the applicable Income Tax Regs. section is sec. 1.736–1(b)(5)(ii). Therefore, the payments he is to receive should first be applied against his section 736(b) amount and no portion treated as a section 736(a) amount until the former amount is exceeded.

Petitioner's argument is specious. The netting does not cause a

reduction in the amount to be paid by the partnership. It is a mere setoff of an amount he owes the partnership against the amount it owes him. This is true whether the amounts are setoff against the semiannual payments or the sum total due from the partnership. For example, if the setoff is to be made against the semiannual payments and petitioner owes the partnership $5,000 in a given year, the netting would result in his paying them $266.86 ($5,000 less the sum of two $2,366.57 payments). However, that payment must be reconstructed as two section 736 payments of $2,366.57 by the partnership and a $5,000 payment by petitioner. If the setoff is to be made against the total due from the partnership, the multiplication of the payment by the ratio .5042 will yield the breakdown of the section 736(a) and (b) amounts. Because a fixed amount is due petitioner, we find that the applicable Income Tax Regs. section is sec. 1.736–1(b)(5)(i).

Petitioner has alleged that the partnership failed to apportion properly to him a part of its 1974 investment credit. However, he has presented no evidence in support of his allegation on which we could make a determination. Therefore, we find for respondent on this issue. *Welch v. Helvering*, 290 U.S. 111, 115 (1933).

Petitioner has also alleged that his enforced separation resulted in an "undetermined" loss due to the misappropriation of partnership assets. We fail to see how a tax loss could arise. Petitioner is recovering his stipulated basis in the partnership through the semiannual payments. We find for respondent on this issue.

Finally, petitioner has introduced a sprinkling of constitutional issues wholly without merit, both in his petition and on brief. Such issues are not supported by the record. Petitioner's beliefs that he has been abused are no doubt sincere, but the partnership is not a party to this action. We find for respondent on these issues. *Welch v. Helvering, supra.*

*Decision will be entered under Rule 155.*