R. TIMMIS WARE and CATHERINE K. WARE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ware v. Commissioner
Docket No. 3890-87.
United States Tax Court
T.C. Memo 1989-165; 1989 Tax Ct. Memo LEXIS 165; 57 T.C.M. (CCH) 105; T.C.M. (RIA) 89165; April 13, 1989
John P. Zampino, for the petitioners. Drita Tonuzi, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1982 in the amount of $ 31,969. In addition, respondent determined an addition to tax under section 6661[1] in the amount of $ 3,197. The issues for decision are whether petitioners realized $ 95,307 [2] of ordinary income during the year in issue as a result of R. Timmis Ware's withdrawal as a partner in a law firm and whether the addition to tax is appropriate. This case has been submitted under Rule 122, and *168 all of the facts have been stipulated. The stipulation of fact and the attached exhibits are incorporated herein by reference. Petitioners resided in Scarsdale, New York, at the time of the filing of their petition. Catherine K. Ware is a party to this proceeding solely by reason of having filed a joint Federal income tax return with her husband. All further references to petitioner are to R. Timmis Ware. Petitioner is an attorney licensed to practice in New York. He was a partner in the law firm of Rogers, Hoge & Hills (RH & H) from 1972 until his withdrawal on December 31, 1981. James B. Swire was also a partner in the same law firm from 1974 until December 31, 1981. From January through August 1981, petitioner and Mr. Swire provided advice to Pharmachemical Industries Incorporated (Pharmachemical) and its subsidiary Pilmar Pharmachemicals Limited (Pilmar) relating to the sale of an Irish pharmaceutical plant owned and operated by Pilmar. During this period of time, they solicited potential buyers of the plant; in so doing, they conducted all the activities relating to the location of a purchaser with the use of RH & H's facilities, personnel, communications and office *169 equipment, and other resources of the firm without the knowledge or consent of RH & H. The efforts of petitioner and Mr. Swire culminated in the sale of the Irish pharmaceutical plant on August 12, 1981, and a fee was paid pursuant to a prior arrangement with Pharmachemical, the details of which are not relevant herein. However, the fee was paid to and held in escrow by one Thomas S. Figgis until its disbursement in January 1982. From and after June 1981, there was a dispute between RH & H, on the one hand, and petitioner and Mr. Swire, on the other, as to who was entitled to the fee. On January 15, 1982, after extensive negotiations, the dispute was settled. Petitioner, Mr. Swire, and RH & H reached an agreement (withdrawal agreement) whereby the respective rights in the fee were settled and petitioner and Mr. Swire withdrew from the law firm as of December 31, 1981. The withdrawal agreement provided: 2. With respect to periods ending on or prior to December 31, 1981, each of the Partners shall be entitled to receive those amounts which he would have been entitled to receive under the Partnership Agreement and the notice issued by the Senior Partners pursuant thereto had *170 that Partner died on December 31, 1981, except for any sums which may be attributable to any income received by the Firm subsequent to December 31, 1981 pursuant to paragraph 4 of this agreement, but including, without limitation: (a) the amount of that Partner's interest in the working capital account at December 31, 1981; (b) the amount of that Partner's interest in the income account for the year ended December 31, 1981 at the percentages designated in a notice dated December 1, 1980 for the Senior Partners (4.7376% in the case of Swire and 4.9798% in the case of Ware); (c) an amount equal to Five Thousand Dollars ($ 5,000.00) times that Partner's share of excess over quota as set forth in the notice dated December 1, 1980 from the Senior Partners (4.7376% in the case of Swire and 4.9798% in the case of Ware); (d) the amount of that Partner's share of the fees and disbursements of the Firm's counsel in connection with the subject matter of this agreement paid in 1981 (4.7376% in the case of Swire and 4.9798% in the case of Ware). * * * 4. Attached as Exhibit A is a computation of the net fee received in connection with the sale of the assets of the Pilmar * * * (the *171 "Net Net Fee"). The Net Fee was determined by increasing the total fee received by the interest thereon and reduced by the legal fee of Irish counsel and the other expenses of Swire and Ware all as more particularly set forth on Exhibit A attached hereto. The Partners will pay to the Firm one-half of the Net Fee. 5. There will be a closing (the "Closing") of this Agreement at such time as the funds of the Net Fee are available for delivery to the Firm, but no later than January 22, 1982. At the closing, the Partners shall pay to the Firm one-half of the Net Fee as determined in paragraph 4 and Exhibit A hereto. At the Closing, the Firm shall pay to Swire and Ware on account of the sums which they are entitled to receive under paragraph 2 hereof the following: (a) With respect to the amount of that Partner's interest in the working capital account December 31, 1981, the sum of $ 13,200.00 in the case of Swire and the sum of $ 13,875.00 in the case of Ware, which sums represent the amount of such Partners' respective interest in the working capital account at December 31, 1981. (b) With respect to the amount of that Partner's interest in the income account for the year ended *172 December 31, 1981, the sum of $ 12,862.40 in the case of Swire and the sum of $ 13,520.20 in the case of Ware, which sums represent the estimated unpaid balance of quota for 1981. * * * (c) With respect to the amount payable under paragraph 2(c) hereof, the sum of $ 23,688.00 in the case of Swire and the sum of $ 24,899.00 in the case of Ware. (d) With respect to the amount payable under paragraph 2(d), the sum of $ 922.49 in the case of Swire and the sum of $ 969.65 in the case of Ware. An attachment to the withdrawal agreement reflected that the total net fee was $ 381,226.57. Pursuant to the withdrawal agreement, petitioner and Mr. Swire each were entitled to one-fourth of the net fee ($ 95,306.64), and RH & H was entitled to the other half of the fee ($ 190,613.28). On or about January 19, 1982, Mr. Figgis was instructed to release $ 86,676.54 of the fee to RH & H and the balance of $ 294,550.02 to petitioner and Mr. Swire. [3]
The withdrawal agreement *173 also provided that petitioner and Mr. Swire were to be non-participating contract partners in the law firm from January 1, 1982, to March 31, 1982. The withdrawal agreement stated that petitioner was to receive a monthly salary of $ 5,775 as consideration for his services. Petitioner reported ordinary income of $ 42,224 received from RH & H on Schedule E, Supplemental Income Schedule, of his 1982 Federal income tax return. This amount represented the $ 17,325 compensation received by petitioner for remaining with RH & H on a non-participating basis from January 1, 1982, until March 31, 1982, and the $ 24,899 received as payment for his income interest under paragraphs 2(c) and 5(c) of the withdrawal agreement. Petitioner reported a long-term capital gain of $ 77,982 on Schedule D, Capital Gains and Loss, representing payments received upon his withdrawal from RH & H. Petitioner calculated this gain as follows: Working Capital Account
$ 13,875
Income Account (Estimated Unpaid
Balance of Quota)
13,520
$ 5,000 x shares of excess over quota
24,899
Distribution
95,307
Total
$ 147,601
Less K-1 Amount
42,224
Gross Selling Price
$ 105,377
Less Adjusted Basis
27,395
Total Gain Reported
$  77,982
*174 Respondent's Explanation of Adjustments to the Statutory Notice of Deficiency, issued on November 20, 1986, states in pertinent part: During the tax year ended December 31, 1982, $ 95,307.00 of income that you received from Pharmachemical Industries Incorporated was improperly treated by you as part of the proceeds from the sale (redemption) of your interest in the law firm of Rogers Hoge and Hills. Furthermore, during the tax year ended December 31, 1982, $ 17,325.00 of the combined proceeds of your sale of your interest in the law firm of Rogers Hoge and Hills and the income you received from Pharmachemical Industries Incorporated was not reported on your return. Accordingly, your taxable income is increased $ 64,114.00 for the tax year ended December 31, 1982, calculated, as follows: Fee from Pharmachemical Industries
Incorporated (Ordinary Income)
$ 95,307.00 Proceeds from Sale (Redemption)
of interest in Rogers Hoge & Hill
$ 27,395.00 Less: Adjusted Basis
(27,395.00)
Gain on Sale (Redemption)(Long Term)
-0-    IRC § 1202 deduction
-0-    Taxable gain on Sale (Redemption)
-0-    Combined income from fee and sale (redemption)
$ 95,307.00 Less: Amount per return
(31,193.00)
Adjustment
$ 64,114.00 *175 Preliminarily, we must dispose of certain contentions of the parties which, for the most part, involve procedural issues. In his deficiency notice, respondent only determined that the $ 95,307 fee and the $ 17,325 compensation from RH & H in 1982 constituted income of petitioner. [4] Respondent now seeks to have us hold that the " capital account" item ($ 13,875) and the "income account" item ($ 13,520), both items aggregating the $ 27,395 which respondent initially included in income and then allowed as an offset by way of "adjusted basis," should be held to be income of petitioner without any offset as guaranteed payments under section 736(a)(2). Respondent, however, neither amended his answer, or otherwise pleaded, to raise any issue as to these amounts, nor did he claim any increased deficiency other than to assert on brief that his determination "except as modified herein, should be sustained." Clearly, if we were to hold that the two items in question were income of petitioner without offset and also sustain respondent's determination as to the $ 95,307, our holding would be a futile act unless we were to hold that the amount of the deficiency should be increased beyond the *176 amount determined in the deficiency notice. However, an increased deficiency must be claimed at or before the hearing. Sec. 6214(a). Otherwise, the amount is limited to the amount determined in the deficiency notice. Estate of Petschek v. Commissioner,81 T.C. 260, 271-272 (1983), affd. on other issues 738 F.2d 67 (2d Cir. 1984); see Pallottini v. Commissioner,90 T.C. 498, 500 (1988). [5] We recognize, of course, that there would be no increase in the deficiency if we were to hold for respondent on either of the two items aggregating $ 27,395 and for petitioners as to the $ 95,307 item. Without attempting to evaluate the likelihood of such a result, we would still preclude respondent from raising the issue in respect of the offset. This is clearly a new issue, and respondent's attempt to raise it on brief is untimely. Aero Rental v. Commissioner,64 T.C. 331, 338 (1975). *177 The principal issue involved herein is the proper treatment of the $ 95,307 received by petitioner as his share of the Pharmachemical transaction fee pursuant to paragraph 4 of the withdrawal agreement. Petitioner asserts that the total fee is attributable to RH & H, that the payment of his share of the fee represents a portion of the amount paid to him on a sale of his partnership interest, and that he properly characterized the proceeds as capital gain under section 741. Respondent, during the presubmission stage of this case, apparently contended initially that the entire fee was attributable to petitioner and Mr. Swire, but he now concedes that it is attributable to RH & H. Respondent goes on, however, to assert that petitioner received his share of the fee in liquidation of his partnership interest and that the distribution is taxable as ordinary income under section 736, either as a portion of an unrealized receivable of RH & H or as a guaranteed payment. Seizing upon what might be described as the shifting sands of respondent's arguments, petitioner characterizes respondent's position on brief as raising a new issue, which the Court should disregard or as to which, at *178 least, should place the burden of proof upon respondent. We find it unnecessary to deal with petitioner's procedural contention because we conclude, upon the basis of the record before us, that respondent should prevail irrespective of the location of the burden of proof. We reach our conclusion under section 741, the very section relied upon by petitioner. Section 741 provides: SEC. 741. RECOGNITION AND CHARACTER OF GAIN OR LOSS ON SALE OR EXCHANGE. In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items which have appreciated substantially in value). Thus, if we assume solely for purposes of decision herein that the transaction between petitioner and RH & H constituted a sale of petitioner's partnership interest, we are left with the question whether the $ 95,307 paid to petitioner in respect of the Pharmachemical *179 transaction fee constitutes an amount received by petitioner attributable to an unrealized receivable of the partnership as provided in section 751(a). Petitioner has failed to confront this question; he simply asserts that it is respondent's burden to show that the fee was an "unrealized receivable" and that respondent has failed to carry this burden by not offering evidence that RH & H did not account for these payments in its partnership return. [6] Here again, we find it unnecessary to resolve any question as to the location of the burden of proof. If the Pharmachemical transaction fee had previously been accounted for by RH & H, there would have been no reason to deal with it separately in the withdrawal agreement; it would have been reflected in one of the other items otherwise dealt with in that agreement, in particular, the amount representing the excess over quota. Nor do we think that the record fails to disclose, as petitioner contends, that RH & H had not filed its returns on a cash basis; paragraph 9 of the partnership agreement provides that the partnership "shall have an Income Account carried on a cash receipts and disbursements basis," and we see no reason to infer *180 that the partnership returns were filed on other than that basis. Cf. sec. 446(a). Nor are we prepared to accept petitioner's argument that RH & H had sufficient control over the Pharmachemical transaction fee in 1981 so that the Pharmachemical fee should be deemed to have been constructively received by RH & H in that year and therefore should not be considered an unrealized receivable at the time of the withdrawal agreement. We are satisfied that the record clearly reveals that the issue as to who was entitled to the fee was very much in dispute after December 31, 1981, and that the issue was not resolved until 1982. Such being the case, we reject petitioner's argument based on constructive receipt of the fee in 1981. The long and the short of the matter is that the Pharmachemical transaction fee was an unrealized receivable of RH & H in respect of which petitioner received a payment of $ 95,307 in the taxable year before us. Consequently, that payment is taxable to him as ordinary income under sections 741 and 751(a). Ledoux v. Commissioner,77 T.C. 293 (1981), affd. *181 695 F.2d 1320 (11th Cir. 1983); cf. Roth v. Commissioner,321 F.2d 605 (9th Cir. 1963), affg. 38 T.C. 171 (1962); Holman v. Commissioner,66 T.C. 809 (1976), affd. 564 F.2d 283 (9th Cir. 1977). [7] In view of our conclusion in respect of section 741, we have no need to address respondent's argument that the distributions were received by petitioner in liquidation of his interest in RH & H and taxable under section 736; we note, however, that the same "unrealized receivables" analysis in respect of the $ 95,307 payment would have applied. See sec. 736(b)(2)(A). Respondent also determined that there was a substantial understatement of income tax and that petitioner was, therefore, subject to an addition to tax equal to 10 percent of the underpayment attributable to such understatement pursuant to section 6661. Petitioner's position clearly does not have the support of "substantial authority." The Omnibus Budget Reconciliation *182 Act of 1986, Pub. L. 99-509, section 8002(a), 100 Stat. 1874, 1951, increased the section 6661(a) addition to tax to 25 percent of the underpayment attributable to a substantial understatement for additions to tax assessed after October 21, 1986. See Pallottini v. Commissioner,90 T.C. 498 (1988). However, respondent has not sought to increase the section 6661 addition in his answer. In view of the foregoing, we do no more than sustain respondent's determination of a 10-percent addition to tax. Horn v. Commissioner,90 T.C. 908, 943 n.21 (1988). Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. We note that the statutory notice of deficiency is based on this figure, while petitioner occasionally uses $ 95,306. We adopt the figure used in the statutory notice of deficiency.↩
3. The portion of RH & H's one-half share of the full $ 190,613.28 was reduced by the payments ($ 53,263.85 to petitioner and $ 50,673.09 to Mr. Swire) required by other provisions of the withdrawal agreement.↩
4. Respondent has now stipulated that the $ 17,325 item was reported by petitioner as ordinary income in 1982, so this amount is no longer at issue. ↩
5. See also Lang v. Commissioner,T.C. Memo. 1982-170↩.
6. Neither the partnership return nor petitioner's K-1 for 1982 are in the record.↩
7. We think it of interest that the three cited cases were extensively discussed in respondent's opening brief but totally ignored by petitioner in both his opening and reply briefs.↩